### MAY *v.* McQUILLAN.

1. BANKS—TRANSFER OF STOCK—EVIDENCE—BANK RECORD.
   A transfer of bank stock on the books of the bank is not conclusive, but only *prima facie,* evidence of ownership.

2. SAME—INSOLVENCY—LIABILITY OF STOCKHOLDERS.
   Under 2 Comp. Laws, § 6135, making stockholders in banks individually liable, for the benefit of the depositors, to an amount equal to the par value of their stock, the owner of stock in a bank at the time of its suspension is so liable, though he subsequently transfers his stock in ignorance of the failure.

3. SAME.
   M. and S. entered into a written agreement whereby S. was to convey real estate to M. in exchange for certain bank stock and a cash bonus; the sum of $50 to be forfeited by either party who should refuse to carry out the contract. The next day M. had the stock transferred to S. on the books of the bank, and a new certificate was issued in S.'s name, and delivered to M. Two days thereafter the bank suspended, being wholly insolvent. The next day the parties met, and, without knowledge of the failure, completed the transaction by exchanging the deed for the certificate and money. *Held,*

that title to the stock did not pass until the delivery of the certificate to S., at which time the bank had suspended, and hence that M. was liable to an assessment as a stockholder under the statute.

Appeal from Ingham; Wiest, J.  Submitted December 11, 1901.  Decided February 11, 1902.

Bill by John A. May, receiver of the Ingham County Savings Bank, against Richard McQuillan and Law M. Simpson, to determine the ownership of certain shares of bank stock, and the consequent liability to an assessment. From a decree against defendant McQuillan, he appealed. On his death the cause was revived in the name of his administratrix, Alice McQuillan.  Affirmed.

Defendant Simpson resided in Jackson, Mich.; and Richard McQuillan, the deceased, in Lansing.  About the 1st of August, 1896, they entered into negotiations for an exchange of properties, by which Simpson was to deed to McQuillan two houses and a lot in the city of Jackson, for which McQuillan was to give Simpson $1,350 in cash, and nine shares of the stock of the Ingham County Savings Bank, then owned by McQuillan, and standing in his name on the books of the bank, and for which he had a certificate, the evidence of ownership.  The negotiations rested entirely in parol until August 3d, when Mr. Simpson and Mr. McQuillan met in the law office of Mr. Smith, at Jackson, for the purpose of consummating the trade. The witnesses do not agree as to why the trade was not then consummated.  Mr. Smith testified that it was because Mr. McQuillan had not then the $1,350 to pay, but said he would have to go to Lansing to raise the money. Mr. Simpson testified that Mr. McQuillan said he did not care to go to the expense of going to Lansing to have the stock transferred without some surety that the transaction would go through.  Mr. McQuillan testified that Mr. Smith advised Mr. Simpson not to consummate the trade until the stock was properly and legally transferred on the

books of the bank, and that Mr. Smith drew a letter to the cashier of the bank, instructing him to transfer the stock, and that such letter was signed either by Mr. Smith or by Mr. Simpson and handed to him, and he took it to the cashier. Stallknecht, the agent who negotiated the matter between Simpson and McQuillan, testified that McQuillan had to go to Lansing to see about transferring the stock, and that a later day was appointed to close the deal. All agree that on August 3d a memorandum was drawn, which was, in effect, an agreement to make the trade, and provided a forfeit of $50 to be paid by either party should he refuse to carry it out. None of these papers were produced.

Mr. McQuillan returned to Lansing, went to the bank August 4th, and had transfers of the stock from McQuillan to Simpson entered upon the books. The stock, as to him, was canceled, and a certificate issued in the name of Simpson, and given by the cashier to McQuillan. McQuillan went to Jackson on the 6th, and on the 7th, about 2 o'clock p. m., the parties met at the office of Mr. Smith, at Jackson, and exchanged papers; the deed from Simpson and wife being delivered to McQuillan, and McQuillan paying the money and delivering the certificate of stock to Simpson. Both Simpson and McQuillan learned that night that the bank had failed. Simpson has never made an offer to rescind, but, when notified of the assessment, denied his liability as a stockholder.

August 6th was the last day the bank did business. The directors met on that evening. In accordance with their directions, the bank was not opened on the morning of the 7th. It was found to be in a state of utter insolvency. The complainant was appointed receiver. Under the order of the court, an assessment was made upon the stockholders, in accordance with the statute, to pay the debts of the bank. Both Simpson and McQuillan denied liability; each claiming that the other was the stockholder at the time the bank failed. Thereupon the complainant filed this bill against both, to determine who was the actual

stockholder and liable for the assessment. The court below found against McQuillan, who appealed. He has since died, and his administratrix prosecutes the appeal. No appeal was taken by the receiver from the decree relieving Simpson.

*Samuel L. Kilbourne,* for complainant.

*Richard Price* (*Rollin H. Person,* of counsel), for appellant.

GRANT, J. (*after stating the facts*). The proofs fail to establish that McQuillan acted in bad faith, and that he transferred his stock in order to avoid liability. There is nothing unusual in the transaction which casts suspicion upon his honesty. The memorandum agreement of August 3d between Simpson and McQuillan was not an absolute agreement on the part of either to trade. On the contrary, it was optional with either one to refuse to do so, upon the forfeiture of $50 to the other party. It is obvious that the title to none of the property which was the subject of the trade passed until the arrangement was carried out on the afternoon of August 7th by the actual delivery of the deed, the payment of the money, and the delivery of the certificate of stock. The transfer upon the books of the bank was not conclusive evidence of ownership, but only *prima facie* evidence. 23 Am. & Eng. Enc. Law (1st Ed.), 782. Mr. Simpson did not become the owner of this stock until the exchange of the papers and the payment of the money on the afternoon of August 7th. The title to the stock must therefore, of necessity, have been in McQuillan. There is no such thing as suspension of title when one stockholder transfers his stock to another. The title remains in the old stockholder until it passes to the new. The statute (2 Comp. Laws, § 6135) makes the stockholders individually liable for the benefit of the depositors of the bank. The statute means the actual stockholders at the time the bank suspends. Under this and similar statutes courts have,

with comparative unanimity, held that this liability was not limited to the stockholders of record at the time of the suspension, but that stockholders who had previously transferred their stock for the purpose of avoiding liability were still liable as stockholders. For the same reason, one cannot, after suspension, relieve himself from liability by transferring the stock of which he was then the actual owner. It is true that no certificate is essential in order to transfer title to the stock. 2 Thomp. Corp. § 2377; Zane, Banks & Banking, § 52; Cook, Stock, Stockh. & Corp. Law, § 258. The certificate is only authentic evidence of title, but is not the stock itself, or essential to the existence of the stock. *Pacific Nat. Bank* v. *Eaton*, 141 U. S. 227 (11 Sup. Ct. 984). In this case, if, without any certificate or any previous transfer upon the books of the bank, McQuillan had actually sold and transferred his stock to Simpson, the title would have passed, and Simpson could have enforced the surrender of the certificate held by McQuillan, and compelled the bank to recognize him as owner by the proper transfers upon its books and the issue of a certificate, unless it had a lien upon it for the debts of McQuillan.

We are cited to no authorities, and find none, similar in their facts to those in this case, or which shed any light upon it. We are, however, of the opinion that the depositors of the bank, under the statute, are entitled to the liability of the real stockholders at the time of the suspension, and that the records of the bank do not conclusively establish who are stockholders. The learned circuit judge gave a wrong reason for a right conclusion.

The decree is affirmed, with costs.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.