DETROIT TRUST CO. *v.* GRANGER.

1. BANKS AND BANKING—TRUST COMPANY—RECEIVERS—TRANSFER OF STOCK—FRAUD—BURDEN OF PROOF.

   Receiver of insolvent trust company, seeking to set aside transfer of assessable stock, has burden of showing insolvency at time of transfer and that transfer was made for fraudulent purpose of avoiding stockholders' liability (3 Comp. Laws 1929, §§ 12005, 12024).

2. SAME—TRUST COMPANY—TRANSFER OF STOCK—SELLER'S KNOWL-
   EDGE OF INSOLVENCY OF COMPANY AND PURCHASER.

   A seller of assessable trust company stock is bound to take no-
   tice of any fact that may reasonably put him on inquiry
   concerning the insolvency of the company or of the proposed
   purchaser and to use diligently the means of knowledge at
   his disposal (3 Comp. Laws 1929, §§ 12005, 12024).

3. SAME—TRUST COMPANY—STOCKHOLDERS PRESUMED TO KNOW OF
   STATUTORY LIABILITY.

   The stockholder of a trust company is presumed to know of
   the statutory liability incident to the ownership of such stock
   (3 Comp. Laws 1929, § 12024).

4. SAME—STOCKHOLDERS' STATUTORY LIABILITY—TRANSFER OF
   STOCK.

   The statutory imposition of liability to an assessment on stock
   in a trust company does not prevent holder thereof from mak-
   ing a *bona fide* sale to someone else who cared to purchase
   it (3 Comp. Laws 1929, §§ 12005, 12024).

5. SAME—TRANSFEREE OF TRUST COMPANY STOCK—EVIDENCE—
   FINANCIAL CONDITION.

   Bankruptcy of transferee of assessable trust company stock at
   a time subsequent to time of transfer of the stock *held*, no
   evidence of his financial condition at the time of such transfer
   (3 Comp. Laws 1929, § 12005).

6. SAME—TRUST COMPANY—SALE OF STOCK—RECEIVERS—EVIDENCE.
   Sale of $100 par value stock of trust company which was not
   collusive, was on the open market and through brokers who
   handled it when it became an unlisted stock, for $1 per share
   to a person not shown to have been insolvent at that time,
   although stock had sold as high as $340 a share and recent
   statement showed book value of $180 per share and company
   had ceased paying dividends about a year previously *held*,
   under circumstances involved, not such a sale as may be set
   aside at the suit of trust company's receiver appointed upon
   petition filed within four months thereafter in absence of
   any showing seller actually knew or should have known of
   precarious financial condition of the company and he testified
   the sale was made because he was disgusted with the stock
   (3 Comp. Laws 1929, §§ 12005, 12024).

7. STATUTES—TRUST COMPANY—TRANSFER OF STOCK—FRAUD—RE-
CEIVERS.

Statute providing that all sales, transfers and assignments of
any trust company stock, made with the intent to defraud
company's creditors shall be void as against such creditors,
"except as to purchasers in good faith and for present fair
consideration, if made within four months prior to the filing
of a petition" for appointment of receiver of such company
*held*, plain, certain and unambiguous without addition or
transposition of words or sentences (3 Comp. Laws 1929,
§ 12005).

Appeal from Wayne; Moll (Lester S.), J. Sub-
mitted June 4, 1936. (Docket No. 70, Calendar No.
38,953.) Decided December 9, 1936.

Bill by Detroit Trust Company, a Michigan cor-
poration, receiver of Guaranty Trust Company of
Detroit, a Michigan corporation, against William R.
Granger, Frank E. Quisenberry and Emilie A.
Quisenberry to set aside the transfer of stock and
enforce a stockholders' liability. Discontinued as
to defendant Frank E. Quisenberry, bankrupt.
From decree for plaintiff against defendant Emilie
Quisenberry only, plaintiff appeals. Affirmed.

*A. W. Sempliner* (*Jason L. Honigman* and *Wm.
M. Sempliner*, of counsel), for plaintiff.

*Raymond A. Latting* (*James O. Murfin*, of coun-
sel), for defendant Granger.

BUTZEL, J. Plaintiff, as receiver, brought suit
against William R. Granger, Frank E. Quisenberry
and his wife, Emilie, to enforce payment of a stock-
holder's liability of $2,500 on account of the owner-
ship of 25 shares of the capital stock of the Guaranty
Trust Company of Detroit. Granger, who was vice-
president of the Grand Ledge State Bank, turned

over the stock to the cashier of that bank shortly after the middle of March, 1931, with directions to sell it on the open market. The cashier on the 20th day of March, 1931, forwarded the stock certificate for sale to responsible brokers in Detroit, who used another brokerage house to make the sale. The stock was no longer listed, but the brokers succeeded in selling it at $1 per share, the market price at the date of the sale, to Frank E. Quisenberry, one of the defendants herein; $22.62, the net proceeds from the sale, was forwarded to Granger.

At the time of the transaction, the trust company was in a rather precarious condition with frozen assets and insufficient funds to meet the obligations unless possibly it took advantage of a provision for extension of time in its bonds and even this might only afford temporary relief and have a bad effect. A meeting of some of the stockholders was held three days after Granger's stock had been sent to Detroit for sale, but there was no general notice sent out nor was Granger notified of the meeting at which efforts were made to raise funds through the assistance of stockholders. The stock at one time had sold as high as $340 per share but after 1929 the price rapidly receded until on December 2, 1930, it sold at $10 per share. Thereupon trading in the stock on the Detroit stock exchange was stopped. On March 20, 1931, a Detroit paper showed the quotation on the stock as "Asked—$5" but no bids. The trust company had sold many million dollars of real estate bonds accompanied with its guaranties and the collapse in real estate values had resulted in large defaults on mortgages. Efforts were being made by Quisenberry to save the company and notwithstanding its difficulties, the report of its condition at the close of business on March 25, 1931,

to the State banking department still showed a book value of approximately $180 a share though a comparatively small amount of available cash. It also evidently failed to show the depreciation in the value of the assets. The previous report of December 31, 1930, was but slightly more favorable.

A few days after Granger forwarded his stock to the Detroit brokers for sale, at the meeting of the large stockholders of the trust company, a committee was nominated to approach those who had not been notified of the meeting or who had not attended it. Subscriptions were taken to obtain additional capital and many of the stockholders were contacted. Quisenberry testified that although the stock ceased paying dividends in March, 1930, prior to his association with the company, he made a thorough examination before he took over the presidency and while he realized the difficulties before him, he was sufficiently optimistic to believe that he could work out the situation and therefore he bought stock that appeared on the market; that at the time he bought the Granger stock he was picking up a large amount of others' stock; that he bought 60 shares of stock the same day he bought Granger's stock; that he had not seen Granger until he met him in the courtroom in Detroit, and to the best of his recollection had never had any dealings with him; that at the time he believed the stock would eventually be worth par and had bought it more or less as a speculation.

The company was insolvent at the time that Granger sold his stock, but it managed to keep going until about July 1, 1931, when it went into receivership. There is absolutely no testimony showing that Quisenberry was not responsible at the time he bought the stock. The stock was evidently forwarded to Detroit indorsed in blank as Quisen-

berry's name had been written in pencil when the stock was presented for transfer. Subsequently, he transferred the stock to his wife. He later went into bankruptcy so that the instant suit was continued only against Granger and Mrs. Quisenberry.

In *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565), we held that a transferor of bank stock could only be held liable when he sold the stock with the express purpose of escaping the statutory liability and that the burden was on the receiver of an insolvent bank to show that the transfer of stock of a bank in a failing condition was made with the fraudulent purpose of avoiding stockholders' liability.

In the instant case, it was conceded that the trust company was insolvent at the time of the sale. Plaintiff also conceded that there was no direct proof in the record showing Granger had actual knowledge of the insolvency. It, however, claims that defendant had knowledge of sufficient facts and circumstances as to put him on notice of the trust company's insolvency.

The rule as to notice is well stated in *Earle v. Carson,* 46 C. C. A. 498 (107 Fed. 639, 60 L. R. A. 266), affirmed 188 U. S. 42 (23 Sup. Ct. 254), as follows:

"The seller is bound simply to diligence, fairness, and good faith in the transaction. He is not bound at his peril to know that the bank is insolvent, or that the proposed purchaser of his shares is insolvent. He is bound to take notice of any fact that may reasonably put him on inquiry concerning the insolvency of the bank or of the purchaser, and to use diligently the means of knowledge at his disposal. If he knows, or has reasonable ground to believe, that the bank is insolvent, it would be a fraud if, with intent to evade his own liability, he

should sell his shares, even to a solvent person. * * * So, also, if with similar knowledge of the bank's insolvency, or with reasonable ground for belief, a shareholder should sell to a person whom he knew to be insolvent, this would be presumably misconduct of the same nature."

See, also, *Stuart* v. *Hayden,* 169 U. S. 1 (18 Sup. Ct. 274).

Attention is called to the fact that Granger, a man of means, would not be motivated to sell stock for the meager sum of $22.62 unless it was done for the purpose of avoiding the stockholders' assessment. Granger denies that he knew of the trust company's financial distress at the time of the sale. The sale was made in 1931, about two years before the bank holiday when so many financial institutions failed. It was shown that Granger received statements from the trust company showing a book value of $180, while the same stock was selling for only $1 per share. It may be assumed that every holder of trust company stock knew of the statutory liability incident to the ownership of such stock. This, however, would not prevent such holder from making a *bona fide* sale of the stock to someone else who cared to purchase the stock in the belief that its value would increase. Plaintiff pointed out that Granger singled out the stock of the Guaranty Trust Company for sale and did not sell his stock in other banks or trust companies, but the inference might be drawn from the failure to sell the other stocks on which there also was a liability, that the stock in question was sold, not because of any fear of statutory liability, but rather for some other reason, which, according to Granger's testimony, was that he was disgusted with it.

Had the stock been transferred to a mere dummy or financially irresponsible person, we would then

have to consider whether the sale was *bona fide* or a mere sham. Such a question is not before us, however, inasmuch as there was no showing that the sale was collusive or that Quisenberry was insolvent at the time of the transfer, his subsequent insolvency being no evidence of his condition in March, 1931, the time of the sale. From aught that appears in the record, the sale was made in good faith and in the regular course of the broker's business. The courts have not gone to the extent of holding a stockholder liable, in the absence of statutory provisions, when in good faith he sells his stock in the open market to a responsible purchaser. Were the rule otherwise, one could not sell bank or trust company stocks that have gone down in price even though he were disgusted with the management of the bank or trust company and wanted to realize what he could from his investment.

While the line to be drawn between a fraudulent sale of bank or trust company stock and one made in the exercise of good business judgment may be difficult to draw, we do not believe that the plaintiff has sustained the burden of proof in this case and we are in accord with the conclusion reached by the trial court, who stated:

"It is my conclusion from the foregoing that the sale of stock by Granger was not in fraud of creditors of the Guaranty Trust Company, nor in violation of the statute. The transaction was accomplished, so far as Granger was concerned, in the usual way, and it is a mere happenstance so far as he is concerned that the stock was purchased through a broker by the then president of the trust company. The sale was made at the then market value of the stock, at what was to my mind a fair consideration, in spite of the height at which the stock was sold in the year 1928. To hold otherwise would, in my

opinion, be the same as saying that Granger had violated the statute by mere sale of the stock, without notice of the trust company's insolvency or the financial irresponsibility of some prospective purchaser; that the mere sale of the stock within four months prior to the filing of the petition for receivership was fraudulent or tantamount to fraud.

"It is urged on behalf of plaintiff that the sale at a reduced figure of $1 per share indicated a desire on the part of the seller to be free from the stock and a probable assessment. If this were true, it would necessarily follow that bank stock under similar circumstances could never be sold without a fraudulent motive. This is not my interpretation of the law. While Mr. Granger may have been and undoubtedly was familiar with the liability on bank stocks, I do not believe that it can be said that his mere desire to dispose of the stock evidences a fraudulent intent."

Appellant, however, also claims that the scope of 3 Comp. Laws 1929, § 12005, should be extended by inserting the word "or" in such a way as to broaden the provisions so as to impose liability on all stockholders who transferred their stock within the four months prior to the filing of a petition asking for the appointment of a receiver. Appellant claims that if this is not done, the effect of the statute is vitiated. Section 12005, reads in part as follows:

"All sales, transfers, and assignments of any stock made or given with the intent and purpose on the part of such stockholder to hinder, delay, or defraud the creditors of such company or any of them shall be null and void as against the creditors of such company, except as to purchasers in good faith and for present fair consideration, if made within four months prior to the filing of a petition asking for the appointment of a receiver of such company."

Appellant contends, however, that the statute does not express the true intent of the legislature and that its meaning should be clarified by interpolating the word "or" or transposing the words so that the statute should be construed so as to read either:

"All sales, *etc.,* shall be null and void as against the creditors of such company, except as to purchasers in good faith and for present consideration *or* if made within four months prior to the filing of a petition," etc.,

or

"All sales, transfers, and assignments of any stock made or given with the intent and purpose on the part of such stockholder to hinder, delay or defraud the creditors of such company or any of them, if made within four months prior to the filing of a petition asking for the appointment of a receiver of such company, *shall be null and void as against the creditors of such company, except as to purchasers in good faith and for present fair consideration.*" (Italics designate transposed words.)

Appellant calls attention to *People* v. *Cain,* 171 Mich. 279, and *City of Grand Rapids* v. *Crocker,* 219 Mich. 178, as authority for the interpolation and *City of Detroit* v. *Chaffee,* 70 Mich. 80, for the transposition. In these cases, it was shown that without such changes the statutes involved would be meaningless or ambiguous and that such changes would give sense and meaning to the statutes, clear up ambiguities and bring out the unquestionable intent of the legislature. Our attention is further directed to statutes of some other States as well as the amendment to the Federal statute wherein the law does impose a liability upon all those who transfer stock within a certain prescribed time prior to the appointment of a receiver. The decisions re-

ferred to are of no avail in the present case as we find nothing meaningless, ambiguous or uncertain in the terms of 3 Comp. Laws 1929, § 12005, and it requires no supplemental words of explanation. There is no showing beyond a haphazard guess that the legislature intended the statute to differ from what its plain and unambiguous words indicate, and it is not within our province to make suggested amendments thereto.

The decree of the trial court is affirmed, with costs to appellee.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.