On March 31, 1930, the late Senator William Alden Smith, then the largest stockholder in the Grand Rapids Savings Bank, caused certain certificates representing 4,377 shares, then owned by him, to be reissued in the names of himself and his wife, Nana A. Smith. Thereafter and until his death, these 4,377 shares of stock stood on the books of the bank in the names of Smith and wife as joint tenants with full right of ownership by survival in case of the death of either. On the same day, a certificate representing 50 shares was issued in the name of William Alden Smith, individually. Eleven dividends were thereafter declared and paid upon the stock, and each dividend check, payable to William Alden Smith and Nana A. was indorsed either by Senator Smith or his secretary, without Mrs. Smith's signature. In all instances, except one, these dividends were deposited in the Grand Rapids Savings Bank to the credit of the personal account of William Alden Smith; it being his custom to have a part of the dividends in varying amounts transferred to the checking account of Mrs. Smith. The exception was a check dated July 1, 1930, for $2,626.20, of which $1,000 was deposited directly to the credit of Mrs. Smith's personal checking account without passing through the bank account of her husband.
Senator Smith died on October 11, 1932, leaving a last will and testament, in which he nominated as his executors, Mrs. Smith, Arthur H. Vandenberg, and Gilbert L. Daane, president of the bank. For reasons satisfactory to themselves, the executors were unwilling to assume the burden imposed *Page 569 
and the probate court for the county of Kent, on November 17, 1932, appointed the Grand Rapids Trust Company, Vandenberg, Daane and Mrs. Smith as administrators of the Senator's estate.
At the time the stock was transferred to the joint names of Smith and wife the Senator was not indebted to the bank, but at the time of his death he owed the bank some $12,500 on past due notes and he was surety upon the obligations of others. Shortly after his death, Mrs. Smith executed an agreement in which she designated the Grand Rapids Trust Company as her agent; the agreement reciting that:
"Whereas said principal and her deceased husband, William Alden Smith, owned a considerable amount of stock in their joint names, which has come to said principal as survivor," etc.
At the same time Mrs. Smith constituted the trust company as her agent in fact, giving to it the usual powers contained in a power of attorney.
The trust company prepared an inventory of the assets of Senator Smith's estate, which was signed by three and sworn to by all the administrators on November 17, 1932, and subsequently filed in the probate court together with an appraisal. In this inventory the 4,377 shares of bank stock were not listed as an asset of the Senator's estate. The corporate administrator set up on its books the Senator's bank stock holdings as only 50 shares, with a value of $1,000.
At the next annual meeting of the bank held on January 10, 1933, Gilbert L. Daane, then president of the bank, appeared and voted the 4,377 shares in the name of the executors of William Alden Smith as well as the 50 shares standing in the Senator's name. The testimony of Mr. Daane's secretary, *Page 570 
Miss Twynam, shows that a printed ballot, bearing Mrs. Smith's signature, was brought into the bank that day by her chauffeur. Miss Twynam claims she told the bearer that the meeting was over and that the stock had already been voted. Nevertheless the signed ballot, which then bore no indication of the number of shares to be voted, was filed in the records of the bank and subsequently someone typed in, above Mrs. Smith's signature, the number of shares.
On January 27th the trust company wrote a letter to the bank calling attention to the fact that it held 50 shares belonging to the Smith estate and asked that future notices, etc., be sent to them.
February 13, 1933, all the banks in the State of Michigan were closed by proclamation of the governor and the Grand Rapids Savings Bank never reopened, its affairs being handled thereafter by a conservator and later by plaintiff receiver.
December 8th, the four administrators signed and filed their first annual account, in which they did not list the 4,377 shares but only showed the 50 shares owned by the Smith estate. Subsequent accounts contained the same listing of the stock.
In April, 1935, the bank receiver filed a claim against the estate of William Alden Smith for 100 per cent. assessment on 4,427 shares, thereby including both the 4,377 held jointly and the 50 shares held individually. The claim finally came on to be heard before the late Judge Perkins in the circuit court for the county of Kent, who held that the estate of Senator Smith was not liable for the assessment on the 4,377 shares because this stock became the property of Mrs. Smith by operation of law upon his death. No appeal was taken from Judge Perkins' determination.
Mrs. Smith died on February 15, 1936, prior to the trial of the instant cause. She had been served *Page 571 
with process in the suit against the bank stockholders but no appearance or answer had been filed in her behalf and the cause was dismissed, without prejudice as to her. It appears from a colloquy between counsel that the attorneys for the trust company had informed the receiver's counsel that, although they did not like to take an inconsistent position, their responsibilities in the matter were such that they were obliged to insist that Mrs. Smith's estate was not liable for the assessment. They called attention to the fact that Mrs. Smith had advised the trust company, in an undated letter, that she wished to confirm an oral statement made "some time ago" that she was "unwilling to accept the title to the stock of the Grand Rapids Savings Bank," etc.
The instant case is an appeal from the order of the probate court of Kent county, disallowing the claim of the receiver against the estate of Nana A. Smith, deceased, and was heard by Judge Verdier of the circuit court for the county of Kent, sitting without a jury. The transcript of the testimony before the commissioners on claims was filed with the court, considerable additional testimony was taken and many exhibits were introduced. There was little, if any, dispute as to the facts. After oral argument and the submission of briefs, the trial judge found that, notwithstanding Mrs. Smith's letter of repudiation, she had, through her voluntary acts, asserted ownership of the 4,377 shares, and, although she might have at one time elected not to accept the stock because of the acts heretofore referred to, she had become a stockholder and her estate was liable for the payment of the assessment upon the 4,377 shares as of June 8, 1937, in the sum of $87,540, with interest to date of judgment, which was entered in the sum of $102,481.49. *Page 572 
The controlling question in this appeal is whether Mrs. Smith's estate is subject to the statutory liability on bank stock standing in the name of her deceased husband and herself as joint tenants, with the right of survivorship.
The general banking act (Act No. 66, Pub. Acts 1929), being 3 Comp. Laws 1929, § 11906, provides the conditions under which shares of stock may be transferred, and says:
"No transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid."
At the time the Senator had the bulk of his holdings of the stock of this bank placed in the name of himself and wife he was not indebted to the bank and no question could be raised as to his right to transfer the stock. The joint ownership statute, 3 Comp. Laws 1929, § 13071, provides that certificates of stock so payable "shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real property held jointly by husband and wife under the laws of this State, with full right of ownership by survivorship in case of the death of either."
The facts and statutes just quoted raised two questions for the consideration of the trial court, both of which were decided adversely to defendants.The first was:
Did Mrs. Smith exercise any voluntary acts of ownership of the stock subsequent to her husband's death?
The trial court said, in effect, that it was improbable that Mrs. Smith failed to realize what she was *Page 573 
doing when she signed the inventory in the estate of William Alden Smith, deceased, which listed only the 50 shares of stock as belonging to the estate. We quote a portion of the findings of the trial judge:
"It is a fair inference that they (the administrators) said to themselves that the other 4,377 shares do not belong to Senator Smith's estate, they belong to Mrs. Smith by reason of the fact she is a survivor of her husband. In other words, right then and there we have a positive assertion on her part that she and not her husband, or her husband's estate, I should say, was the owner of that stock. * * *
"It is inconceivable that when she appointed the Grand Rapids Trust Company to handle her affairs she did not talk over with them what her property consisted of. It is inconceivable that when the Grand Rapids Trust Company made a list and set up on their books the property that she owned, that she did not tell them what it was. She knew better than anyone else what it was, and this entry on the books of the Grand Rapids Trust Company that she was the owner of 4,377 shares of the capital stock of the Grand Rapids Bank did not come out of the blue sky, it did not come out of the heavens to somebody in the Grand Rapids Trust Company. It came from Nana A. Smith and from no one else. Again asserting the ownership of that stock."
The trial judge deemed it of little importance that proceeds of the dividends were transferred to Mrs. Smith during the Senator's lifetime or that the trust company had taken an inconsistent position in the defense of the two claims. In discussing the attempt to vote the stock at the annual meeting, the court said:
"Whether her vote was a nullity or not does not make a particle of difference. It is again an assertion on her part that she owned this stock. Nobody influenced her to do it. It is her voluntary act. She *Page 574 
had no right to vote unless she was a stockholder of that bank, and by voting it she said, 'I am a stockholder of this bank and I am going to vote at this election.' As I have said, the only stock she could possibly have claimed as giving her the right to vote as a stockholder was this stock that came to her by right of surviving her husband."
In discussing the letter of disclaimer, the court said:
"If that letter had been sent promptly after Senator Smith's death or even if she had done nothing in the meantime asserting the ownership of that stock, I would agree with counsel for the estate she would not be liable. She has a right to say whether she will assume a stockholder's liability and elect to take the stock or not. She has that right and she took it. That is the trouble with this case, and there are too many facts indicating it that cannot be disputed."
It is well settled that, in the absence of evidence to the contrary, stock is presumed to belong to the party in whose name it appears upon the books of the bank. May v. McQuillan,129 Mich. 392, and the record owner has the burden of proof that the real owner is someone else.
Where stocks are transferred to another without his knowledge and consent, he has a right to repudiate the transaction, but "he is presumed to be the owner of the stock when his name appears upon the books of the bank as such owner, and the burden of proof is upon him to show that he is in fact not the owner." Finn v. Brown, 142 U.S. 56 (12 Sup. Ct. 136).
Mrs. Smith asserted her ownership by attempting to vote the 4,377 shares of stock; by signing the sworn inventory and accounts in her late husband's *Page 575 
estate from which the stock held jointly was omitted, and by her own statement in her agency agreement with the Grand Rapids Trust Company. Each of these acts was definite and voluntary and amounted, in law, to an acquiescence in and a ratification of her ownership of the stock. See Williams v. Vreeland,250 U.S. 295 (39 Sup. Ct. 438, 3 A.L.R. 1038).
In Fors v. Thoman, 267 Mich. 148, Mrs. Thoman had no knowledge that her name had been placed with that of her husband on some reissued bank stock and paid no consideration therefor. However, because she indorsed a dividend check payable to herself and husband and, in his absence, deposited the check in their joint bank account, this court held, under the authority of Keyser v. Hitz, 133 U.S. 138
(10 Sup. Ct. 290), and other authorities therein cited, that she was estopped to deny her statutory liability, and said:
"Although in a limited sense there is an element of contract when one becomes a stockholder, the liability for an assessment is based on the provisions of the statute.*"
This statement was followed in Re Burger's Estate, 276 Mich. 485,501.
The test is not what others did with respect to the stock but what Mrs. Smith did herself. That Mr. Daane voted stock in the name of the William Alden Smith estate without objection is of no consequence. Nor is it material that Mrs. Smith did not actually succeed in voting the stock. When she signed the ballot in her attempt to vote it she exercised a right of ownership. Williams v. Vreeland, supra.
"Approval, ratification and acquiescence all presuppose the existence of some actual knowledge of *Page 576 
the prior action and what amounts to a purpose to abide by it."Williams v. Vreeland, supra.
So far as Mrs. Smith's actions were concerned, she took the position that she was a stockholder.
Appellants argue that, even though we might find that Mrs. Smith's estate is the owner of the stock, nevertheless it cannot become liable thereon because the bank was within its rights in treating the estate of Senator Smith as the true owner so long as any of his past due obligations to the bank remained unpaid. It is urged that the administrators of Senator Smith's estate could compel a transfer of the stock to that estate and that, under the provisions of 3 Comp. Laws 1929, § 11907, it was the duty of the directors of the bank either to sell or cancel the stock in order to enforce payment of these past due obligations.
We have already pointed out that, at the time the stock was transferred to the joint owners, Senator Smith was not indebted to the bank. This appeal presents the unusual situation of the receiver of a closed bank, seeking to replenish its assets by collection of an assessment from the estate of a deceased survivor and a defense to such action based upon the statutory lien which belongs alone to the bank and its receiver. It is sufficient to say that neither the bank nor its receiver has asserted any lien rights. Had Mrs. Smith exercised acts of ownership prior to the time Senator Smith's debt was incurred and before the bank's lien came into existence, no one would deny that she was liable on the assessment. The fact that she performed acts of ownership subsequent to her husband's death should not permit an avoidance of such liability.
There was no transfer which could be affected by the lien statute, 3 Comp. Laws 1929, § 11906; the *Page 577 
actual "transfer" within the meaning of the statute occurred when the stock was reissued in the joint names and title to the stock was thereafter affected only by operation of the statute, 3 Comp. Laws 1929, § 13071, and Mrs. Smith's assenting to become a stockholder.
No one has attempted to transfer the stock on the books of the bank and neither the bank nor its receiver is asserting any lien or objecting to Mrs. Smith's exercise of the rights of ownership.
 In view of our holding in McCaslin v. Albertson, 279 Mich. 650, as to the validity of the assessment, and Mrs. Smith's voluntary acts of ownership being sufficient to bind her as a stockholder, and because no question of lien rights is being raised by appellee, we conclude that the court's decision was correct and its judgment proper.
The judgment below is affirmed, with costs to appellees.
NORTH, C.J., and FEAD, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.
* See 3 Comp. Laws 1929, § 11945. — REPORTER. *Page 578