GLASS v. MacNAUGHTON.

1. BANKS AND BANKING—TRANSFER OF STOCK—EVASION OF LIABILITY.
A transfer of bank stock made to evade statutory liability is void even though made more than four months before the appointment of a receiver (3 Comp. Laws 1929, § 11906).

2. SAME—TRANSFER OF STOCK TO EVADE LIABILITY—FRAUD—BURDEN OF PROOF.
In bank receiver's suit to recover assessments from former directors who had transferred their stock less than two months before bank was closed by governor's proclamation but more than four months prior to appointment of receiver, fraud is a necessary element, the burden of proof of which was on plaintiff since it may not be presumed (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

3. SAME—TRANSFER TO FINANCIALLY IRRESPONSIBLE PERSON—INTENT.
A transfer by a stockholder of his stock to a financially irresponsible person, with knowledge that the bank is in a failing condition and made with intent to escape the statutory stockholders' liability, will be held to be null and void.

4. SAME—INTENT—INFERENCES.
Intent to avoid statutory liability of bank stockholder may be inferred from facts and circumstances surrounding the transfer.

5. SAME—PROOF OF INTENT TO EVADE ASSESSMENT.
Intent involved in transfer of bank stock subject to statutory liability need not be separately proved by direct evidence but may be found as an inference from all the facts in proof.

6. SAME—INTENT—CONDITION OF BANK.
Condition of bank at time directors sold their stock is unimportant where it is shown that disposal was not made with intent to hinder, delay or defraud its creditors as transferors may only be held liable where they sell with the express purpose of escaping statutory liability (3 Comp. Laws 1929, § 11906).

7. SAME—EVASION OF STATUTORY LIABILITY—FINDING OF COURT—RECORD.

> Finding of trial court in bank receiver's suit to enforce statutory liability that directors had not sold their stock for the purpose of evading such liability *held*, sustained by record (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

8. APPEAL AND ERROR—EVIDENCE WEIGHED BY SUPREME COURT ON TRIAL DE NOVO IN EQUITY.

> On appeal in chancery Supreme Court tries case *de novo* and examines and weighs the evidence.

9. BANKS AND BANKING—TRANSFER OF STOCK—DIRECTORS—EVIDENCE.

> Evidence that director of consolidated bank who sold all of his stock shortly before the bank holiday in 1933 as a protest to resignation of a particular officer for whom director had great respect, his own testimony that he considered the bank solvent as did other directors who testified and some of whom retained their stock *held*, to show that disposal of his stock was not for purpose of evading statutory liability (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

10. SAME—DIRECTOR—ATTORNEY—DISSATISFACTION WITH MANAGEMENT—FRAUD.

> Director of consolidated bank which had resulted from merger of three banks, who was also an attorney, who gave as his reasons for severing his connection with the consolidated bank that the legal business from such connection he had formerly enjoyed was greatly reduced and that he did not approve two changes in the officer personnel, and other dissatisfaction with the management, although he then believed bank solvent and continued to keep his family bank accounts there, *held*, to demonstrate that he acted without fraudulent intent in disposing of his stock (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

11. SAME—SALE OF STOCK AT LOSS—FRAUD—INTENT—EVIDENCE.

> Sale of bank stock at a loss *held*, not sufficient to establish seller's fraudulent intent to evade statutory liability for assessment or to hinder, delay or defraud creditors of the bank (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

12. EVIDENCE—JUDICIAL NOTICE—ORDER CLOSING ALL BANKS—SOLVENCY.

> Supreme Court takes judicial notice of fact that governor's order of February 14, 1933, closing banks, applied to all banks in the State and was not in itself evidence of insolvency of a particular bank.

13. BANKS AND BANKING—CONSERVATORS—SOLVENCY.

Conservators are appointed by State banking commissioner under Act No. 32, §§ 4, 5, Pub. Acts 1933, in the hope, if not expectation, that solvency of the bank may be maintained.

14. BROKERS—BANK STOCK—INTENT—REGULAR COURSE OF BUSINESS.

Brokerage house through which transfers of bank stock were made in the regular course of business a few weeks before the bank holiday of 1933 *held*, not liable as transferor of such stock for stock assessment thereon at suit of receiver since there was no intent to hinder, delay or defraud creditors, notwithstanding two directors of the bank, who disposed of all of their stock and were also defendants herein, were stockholders and directors of the brokerage house (3 Comp. Laws 1929, § 11906; Act No. 32, Pub. Acts 1933, as amended).

15. LIMITATION OF ACTIONS—BANK STOCK ASSESSMENT—TRANSFER OF STOCK.

Since bank receiver's cause of action on stock assessments dates from date of assessment rather than date of sale of stock, trial court's holding that cause of action as to one block of stock was barred because transferor was not joined as a party until over six years had elapsed since date of sale was erroneous where transferor was a party within six years from time assessment was levied (3 Comp. Laws 1929, §§ 11906, 13976; Act No. 32, Pub. Acts 1933, as amended).

Appeal from Kent; Brown (William B.), J. Submitted October 18, 1939. (Docket No. 92, Calendar No. 40,773.) Decided December 19, 1939.

Harry Glass, Sr., receiver of American Home Security Bank, a corporation, against John D. MacNaughton and others to enforce a stock assessment. MacNaughton, Greenawalt & Company and others added as parties defendant. Decree for plaintiff failing to enforce assessment against defendants MacNaughton; Waer; MacNaughton, Greenawalt & Company, and the distributees of the estate of Harry I. Sanford. Plaintiff appeals. Affirmed.

*McCobb & Heaney* and *John M. Dunham,* for plaintiff.

*Smith, Strawhecker & Wetmore,* for defendants MacNaughton and MacNaughton, Greenawalt & Company.

*Norris, McPherson, Harrington & Waer,* for defendant Waer.

CHANDLER, J.   A bill in equity was filed by plaintiff as receiver of American Home Security Bank, a Michigan banking corporation, against defendants herein seeking to set aside certain transfers of stock of the American Home Security Bank made by defendants John D. MacNaughton and Oscar E. Waer, under the provisions of 3 Comp. Laws 1929, § 11906 (Stat. Ann. § 23.14), and to recover an assessment liability against them as the owners of such stock under the provisions of Act No. 66, Pub. Acts 1929, as amended (Stat. Ann. § 23.1 *et seq.*) and Act No. 32, Pub. Acts 1933, as amended (Comp. Laws Supp. 1935, § 12077–1 *et seq.*, Stat. Ann. § 23.91 *et seq.*).

In the event that the transfers made by defendants MacNaughton and Waer are not set aside, plaintiff seeks to set aside the transfers made by defendant MacNaughton, Greenawalt & Company, the brokerage house through which the sales were made, and recover the assessment liability from it by virtue of the same statutes.

Finally, and in the alternative, the bill of complaint is directed towards the remaining defendants whereby it is sought to hold them liable for the statutory assessment as record owners or the real owners of the stock in suit.

Defendants MacNaughton and Waer were directors of the American Home Security Bank, Grand

Rapids, Michigan, which bank was the outgrowth of a consolidation, in September, 1931, of the American National Bank, Security National Bank and the Home State Bank for Savings, said merger having been approved by the State banking department. The aforesaid defendants were also stockholders and directors of the brokerage firm of MacNaughton, Greenawalt & Company, a defendant herein, through which all the sales and transfers complained of were made. Examinations of the American Home Security Bank were made by the State bank examiners on February 15, 1932 and November 28, 1932, the reports being received by the banking department on March 4, 1932 and December 12, 1932, respectively. Defendant MacNaughton remained a director of the bank until he sold his qualifying shares of stock on January 18, 1933. Defendant Waer was a director until the annual meeting of the board of directors on January 10, 1933, when he did not stand for re-election.

Mr. Waer owned 255 shares of stock in the American Home Security Bank of the par value of $10 per share, and sold 160 shares on January 9, 1933 and 95 shares on January 18, 1933. Mr. MacNaughton sold 13 shares in May, 1932, 38 shares in September, 1932, and his remaining 100 shares on January 18, 1933.

On February 14, 1933, the governor of Michigan proclaimed a bank holiday whereby all banks in the State were closed. The American Home Security Bank was not permitted to reopen, and a conservator was appointed March 29, 1933. A receiver was appointed on October 2, 1933, and on November 15, 1933, an order to enforce the statutory liability of the stockholders was issued.

The bill of complaint alleges that defendants Mac-Naughton and Waer disposed of their shares ''with

knowledge of the precarious and failing condition of said bank and with intent to avoid the liability imposed by law upon the owners of bank stock by the statutes of the State of Michigan in case of failure thereof, and with intent to hinder, delay and defraud the creditors of said bank.''

The trial court failed to sustain the foregoing contention of the plaintiff, holding that the sales were made in good faith and without intent to delay, hinder or defraud the creditors of said bank. With the exception of Gertrude Sanford, who was not served with process, the record owners of the stock named as defendants in this case were held liable for the stock assessments, amounting to 100 per cent. of the par value, plus interest. Those defendants are J. Judson Cordes, Harriett Nicholson, John Vander Jagt and Michael Vander Velde. There is no allegation in the bill of complaint nor any evidence that these parties are not financially responsible. The other parties defendant are the heirs of Harry Sanford who purchased 100 shares of the stock in question and made an immediate gift of it to Gertrude Sanford, his divorced wife, in whose name the stock was registered. No liability was imposed on these heirs and no appeal has been taken as against them.

Plaintiff's appeal is founded on alleged error of the trial court in directing its decree against the defendant stockholders of record, rather than against defendants John D. MacNaughton, Oscar E. Waer, or MacNaughton, Greenawalt & Company.

Both the appellant and the appellees have amply set forth the facts and their respective theories of the law involved in lengthy briefs. In addition the trial judge filed an extensive opinion. Independent search has failed to reveal new matter of controlling importance.

Plaintiff's case is predicated on 3 Comp. Laws 1929, § 11906 (Stat. Ann. § 23.14), which provides in part as follows:

"All sales, transfers and assignments of any stock made or given with the intent and purpose on the part of such stockholder to hinder, delay or defraud the creditors of such bank or any of them shall be null and void as against the creditors of such bank, except as to purchasers in good faith and for present fair consideration, if made within four months prior to the filing of a petition asking for the appointment of a receiver of such bank."

In *McCaslin* v. *Albertson,* 279 Mich. 650, it was held that, where a transfer has been made for the purpose of evading statutory liability, it is void even though made more than four months before the appointment of a receiver.

In a case of the instant kind, fraud is a necessary element and plaintiff has the burden of establishing the fraud. Fraud may not be presumed. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565); *Detroit Trust Co.* v. *Hockett,* 278 Mich. 124; *Detroit Trust Co.* v. *Granger,* 278 Mich. 152.

In *McCaslin* v. *Albertson, supra,* 661, we said:

"It is established that a transfer by a stockholder of his stock to a financially irresponsible person, with knowledge that the bank is in a failing condition and made with intent to escape the statutory stockholder's liability, will be held to be null and void. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565). The intent to avoid liability may be inferred from the facts and circumstances surrounding the transfer."

Intent to escape statutory liability through sale of their bank stock is a necessary component of the fraud with which defendants are charged. *Foster*

v. *Row, supra; Detroit Trust Co.* v. *Hartwick,* 278 Mich. 139. But, as indicated by the case last cited, as well as *Detroit Trust Co.* v. *Drummond,* 284 Mich. 399, such intent need not necessarily be proved by direct evidence but may be found as an inference from all the facts in the case.

The decisive question is whether the defendants John MacNaughton and Oscar Waer sold their stock with intent to hinder, delay or defraud creditors of the bank or for the express purpose of evading statutory liability on the stock. If the answer is negative, then the exact status of the bank's condition is immaterial, because even if the bank were in a failing condition, a sale without intent to hinder, delay or defraud the creditors of the bank would not render the transferors liable. The transferor of bank stock can be held liable only where the sale was made with the express purpose of escaping statutory liability. *Detroit Trust Co.* v. *Granger, supra.* The trial judge found no such purpose or intent and, from the record, we are inclined to agree with him.

This court, on chancery appeals, tries such cases *de novo* and examines and weighs the evidence. *Detroit Trust Co.* v. *Hartwick, supra.* The evidence shows that both MacNaughton and Waer had personal reasons motivating them to sell their stock. In that respect this case differs from *Detroit Trust Co.* v. *Hockett, supra,* in which the failure of the defendant to testify was deemed a badge of fraud where the plaintiff had made out a circumstantial case of fraud.

Mr. MacNaughton and Mr. Waer, before the merger, were connected with the American National Bank. After the consolidation, there was still a division of feeling among the directors from the separate banks, and it was evident that one group or

another would eventually dominate. Ultimately, it
appeared that the directors who came over with the
Security National Bank were going to acquire effec-
tive control. Then, in the early part of January,
1933, defendant MacNaughton learned that Mr. Als-
over, one of the bank's officers and a friend of
MacNaughton, was going to sever his connection
with the bank; and it was rumored that his resigna-
tion was forced. When Mr. MacNaughton confirmed
the fact that Mr. Alsover was leaving, he instructed
his partner in the brokerage firm, Mr. Greenawalt,
to sell his bank stock for him as a protest. Mr. Mac-
Naughton had been re-elected a director on January
10, 1933, and sold the last of his stock on January 18,
1933. He testified that he acted in good faith in
selling his qualifying shares, and felt that this was
a less embarrassing method than tendering a resig-
nation. His partner, Mr. Greenawalt, was also a
director of the bank. He testified that he considered
the bank solvent, and retained his stock until the bank
was closed and later paid the assessment thereon.
Mr. Greenawalt told Mr. MacNaughton that he
thought the latter was being a little hasty in order-
ing his stock sold merely because Mr. Alsover, for
whom MacNaughton had much respect, was leaving
the bank. Mr. MacNaughton considered the bank
solvent, as did Mr. Greenawalt and the other direc-
tors according to their testimony.

The above facts do not evidence a fraudulent in-
tent to evade liability through sale of the stock, but
rather show the existence of plausible reasons. If
MacNaughton desired to evade liability, his act of
standing for re-election as a director on January 10,
1933, seems inconsistent with such intent. The di-
rectors were optimistic about the bank's future, and
even after the bank holiday they had hopes of con-

tinuing as a going concern. If the bank assessment liability had been anticipated, it seems strange that Mr. Greenawalt would not also have been alarmed sufficiently to take action.

Mr. Waer testified that the legal business which he had previously obtained from the American National Bank was greatly reduced after the consolidation, and matters which he formerly handled were turned over to someone else. This he assigns as one reason for severing his connection with the bank and selling his stock. He further testified:

"And finally, towards the end of the year, Colonel Schouten, who had been with our bank, was removed early during the year. Towards the latter part of the year it was plainly indicated that Mr. Alsover who was in our opinion the only banker in the reorganization was to be let out, which was a further reason why I sold my stock and did not care to be a member of the board for the ensuing year, because I did not feel that the management was such as it should be, if they were going to do what they planned to do."

About the time Waer was disposing of his bank stock, he was also selling other securities. Despite his sale of the bank stock, Mr. Waer was of the opinion that the bank was solvent, and he continued to keep his family bank accounts there.

We find from the record that the evidence demonstrates that both MacNaughton and Waer were dissatisfied with the management of the bank after the consolidation and felt a lessening of their influence in directing the bank's affairs. They had a right to sever their connection with the bank through sale of their stock if, in so doing, they acted without fraudulent intent as to the bank's creditors. No such intent was proved and, under the circumstances of

this case, should not be inferred. Sale of stock at a loss is not sufficient to establish fraudulent intent. *Detroit Trust Co.* v. *Granger, supra,* 159. As was said in that case,

"Were the rule otherwise, one could not sell bank or trust company stocks that have gone down in price even though he were disgusted with the management of the bank or trust company and wanted to realize what he could from his investment."

The director defendants did not doubt the ability of the bank to continue its business, so anticipation of double assessment on the bank stock would be problematical. The bank holiday was unexpected. In *Lawrence* v. *DeBoer*, 273 Mich. 172, we said:

"As before stated, this bank (American Home Security Bank) closed on February 14, 1933, by order of the governor. We may take judicial notice of the fact that this order applied to all of the banks in the State and was not in itself an evidence of the bank's insolvency. In March following, a conservator thereof was appointed by the banking commissioner under the provision therefor in Act No. 32, §§ 4, 5, Pub. Acts 1933. It seems clear that such an appointment is provided for in the hope, if not the expectation, that its solvency may be maintained. This is evidenced by the provision in the next section that, in case the commissioner decides to wind up the affairs of the bank, he may appoint a receiver therefor whose duties are therein defined."

On the whole, it seems to be clearly apparent that proof of fraudulent intent on the part of defendants Waer and MacNaughton is lacking.

The trial judge held that MacNaughton, Greenawalt & Company sold the stock in good faith in the regular course of business and not with intent to hinder, delay or defraud creditors.

As to the sale by the brokerage concern to Harriett Nicholson of 13 shares of American Home Security Bank stock on May 10, 1932, the court held that any action by plaintiff against MacNaughton, Greenawalt & Company was barred by the statute of limitations,* because that firm was not joined as a party defendant until August 3, 1938. The latter holding appears inaccurate. No cause of action arose at the time of the sale because there was as yet no assessment levied. One might never be made. Plaintiff's cause of action dates from the date of the assessment, November 15, 1933. *Nichol* v. *Newman*, 160 Mich. 582; *Peake* v. *Fuller*, 123 Mich. 684. However, the question is unimportant because this sale was not unlike the others, except that it was made much earlier. If the later sales were made in good faith, then certainly the same is true of the sale to defendant Harriett Nicholson.

The decree of the trial court is affirmed, with costs to appellees.

Butzel, C. J., and Wiest, Bushnell, Potter, North, and McAllister, JJ., concurred. Sharpe, J., did not sit.

---

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—Reporter.