### SEWELL v. SWIFT.

(Supreme Court, Appellate Division, First Department. June 7, 1912.)

1. BILLS AND NOTES (§ 519*)—ACTIONS—EVIDENCE.

  In an action on demand notes, evidence of a collateral agreement *held* insufficient to show intention on the part of the parties to change the character of the notes to a mere evidence of advances.

  [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1802; Dec. Dig. § 519.*]

2. LIMITATION OF ACTIONS (§ 48*)—PERSONAL ACTIONS—STATUTE.

  Under the provisions of Code Civ. Proc. § 410, providing that where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, the statute of limitations begins to run on a demand note from the date of the note.

  [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 259–265, 351; Dec. Dig. § 48.*]

  Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Barton Sewell against Frederic J. Swift. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered unless plaintiff enters remittitur.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, MILLER, and DOWLING, JJ.

Frederic J. Swift, of New York City, in pro. per.

D. Cady Herrick, of New York City, for respondent.

INGRAHAM, P. J.   The action is to recover upon five promissory notes, the first dated May 11, 1904, by which, on demand, the defendant promised to pay to the order of the plaintiff $4,000, at No. 71 Broadway, New York, with interest at 6 per cent.; the second, dated New York, June 14, 1904, by which on demand after date the defendant promised to pay to the order of the plaintiff $4,000, at No. 71 Broadway, with interest at 6 per cent.; the third, dated June 14, 1905, by which, on demand, the defendant promised to pay to the order of the plaintiff $1,000, at No. 71 Broadway, New York; the fourth, dated August 30, 1905, by which the defendant, on demand, promised to pay to the order of the plaintiff $5,000, at No. 71 Broadway, New York; and the fifth, dated October 2, 1906, whereby the defendant on demand after date promised to pay to the order of the plaintiff $6,000, at No. 71 Broadway, New York City.   The defendant in his answer does not deny the making and delivery of these notes, but alleges that the said alleged promissory notes were placed in the hands of the plaintiff under a mutual understanding and agreement that they were not to be regarded as promissory notes obligating the defendant to pay the same, but were to be held by the plaintiff as evidence of indebtedness in the event of the defendant's death pending the formation of a company to take over an invention known as the Typo-telegraph or the sale of said invention, an invention which the plaintiff and the defendant were jointly interested and in the development of which the money represented by the alleged promissory notes was used by the defendant for the joint benefit of the plaintiff and himself, and then sets up the statute of limitations.

[1] On the trial the plaintiff introduced these notes in evidence, and also introduced in evidence a check drawn by the plaintiff to the order of the defendant dated in each case the day the notes were dated, and which were indorsed by the defendant and paid to him.   The plaintiff called as a witness his private secretary, who testified that the plaintiff instructed him to make out a note for defendant's signature and make out the check produced in exchange for the note when signed by the defendant; that he gave the check to the defendant, and the defendant signed the note and delivered it to the witness.   The plaintiff then introduced a letter from the defendant to the plaintiff dated May 11, 1904, the date of the first note.   This letter, addressed to the plaintiff, is as follows:

"I inclose my note for $4,000.  So that your interests may be protected, and in order that the relations existing between us may be in written form in case of the death of either of us, I herewith state that this and such future loans as you may make me are for the purpose of assisting me in perfecting the invention known as the Typo-telegraph, and in which you are to become interested in the formation of the company.  The advances are made to me pending the formation of such company, or the sale of the invention, and I bind myself for their payment in case of the failure to dispose of said in-

vention as stated; and upon the formation of said company or said sale I am to repay the amount thereof out of my profits immediately upon their receipt by me. These advances are made to me personally and are irrespective of such interests as you may acquire in said invention by participation in the formation of said company or said sale."

The plaintiff then rested, and the defendant, called as a witness on his own behalf, testified: That in 1903 he was interested in the invention known as the Typo-telegraph. That during the summer and fall of 1903 the defendant had been endeavoring to induce the plaintiff to become interested in this invention. That on the 30th of November the defendant had succeeded in getting an agreement or option from the other parties interested in the invention, and the plaintiff said he would advance defendant for the promotion of this Typo-telegraph up to $50,000, or such sum as was necessary for its promotion up to that sum. That upon the 11th of May, or prior thereto, the defendant had asked the plaintiff for $4,000. That a note that he had at the Oriental Bank was coming due, and the defendant needed the money to pay on account of that. That the plaintiff demanded a note which the defendant objected to giving, to which plaintiff said that if defendant died he would have nothing to show for it, so the defendant said he would give the note if the defendant could give an agreement which would state the conditions, to which plaintiff said, "All right, you draw up an agreement." This was the letter of May 14th, which he sent to plaintiff, and the next day he received the $4,000, represented by the first note. That about June 14th the defendant applied to the plaintiff for another loan, and on June 14th plaintiff gave him the $4,000 represented by the second note. About the 30th of August the defendant applied to plaintiff for $5,000 additional, and on the 30th of August plaintiff advanced defendant the $5,000, represented by the third note. That on October 2, 1906, the defendant received from the plaintiff $6,000, represented by the note of that date. After the panic of October, 1907, the plaintiff declined to make further advances. The defendant then offered correspondence between the parties which related to the efforts of the defendant to form a corporation to operate under this patent and persons to whom the defendant should apply to become interested in the invention. The defendant then rested, and the court directed a verdict for the plaintiff for the full amount.

This action was commenced on December 20, 1910. The notes on their face require the absolute payment of a sum of money on demand. The written undertaking of the defendant, delivered to the plaintiff at the time the first note was given, recognized that the money paid by the plaintiff to the defendant which these notes represented were loans made by the plaintiff to the defendant; that the advances were made to the defendant pending the formation of a corporation or the sale of the invention, and the defendant bound himself to repay the amount of the advances to the plaintiff out of the first money that he received upon the formation of the said company or sale of the invention. There was no agreement, however, express or implied, that the notes should not be payable before the formation of the com-

pany or the sale of the invention, nor did the defendant testify that there was any such agreement. On the contrary, the letter itself states that the advances were made to the defendant personally, and defendant bound himself for the payment of the notes in case of a failure to dispose of the invention as stated, and these advances were irrespective of such interest as the plaintiff may acquire in the invention by participation in the formation of said company or said sale. There is nothing in this letter nor in the understanding between the parties as to which there is any testimony that would prevent the plaintiff from calling on the defendant at any time for the repayment of the advances represented by these notes. By making these advances the plaintiff acquired no interest in the invention and no right to any part of the profits that the defendant could secure by either the formation of the company or the sale of the invention. The plaintiff's interest was evidently to be determined by a further agreement between the parties. There was no postponement, therefore, of the right of the plaintiff to demand at any time the payment of these notes, and nothing in the testimony to justify a finding that the obligation of the defendant to pay was postponed until the formation of the company or the sale of the invention.

Assuming that this agreement of the defendant was to become effective only upon the death of either of the parties to these transactions, it left the notes as the only evidence of the agreement between the parties and imposed upon the defendant an absolute obligation to pay on demand. It is quite clear that this letter was not itself an agreement, but simply stated in writing the arrangement between the parties under which the loans were made. It was put in writing to furnish evidence of the existing agreement, and the evidence of the agreement which actually existed was as competent to prove the agreement before as after the death of either of the parties. It did not in terms modify in any particular the obligation assumed by the defendant in the delivery of the notes which was to repay the amount advanced on demand. I think therefore these notes must be treated as demand notes when delivered and the obligation of the defendant limited by the terms of the instruments themselves.

[2] By section 410 of the Code of Civil Procedure it is provided that, where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right.to make the demand is complete. The statute therefore commenced to run from the date of the notes. The first note was dated May 11, 1904, and the second note June 14, 1904. The statute ran against these two notes six years after that date, and the action was not commenced until December 20, 1910. If we are right in our construction of the agreement between the parties, the first two notes were barred by the statute; and plaintiff is entitled to recover upon the other notes.

It follows therefore that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the judgment by deducting the sum of $8,000 and interest thereon from the amount of the verdict as directed,

and in case of the plaintiff so stipulating the judgment be modified accordingly, and as modified affirmed, without costs.

McLAUGHLIN, MILLER, and DOWLING, JJ., concur.

LAUGHLIN, J. I dissent from the affirmance of the judgment as modified, if the stipulation for reduction be given, and vote for unconditional reversal.

(151 App. Div. 75.)

MAYNE v. NASSAU ELECTRIC R. CO. et al.

(Supreme Court, Appellate Division, Second Department. May 24, 1912.)

EMINENT DOMAIN (§ 270*)—COMPENSATION—ADDITIONAL SERVITUDE—STREET RAILROADS—OWNERSHIP OF LOTS AND FEE OF STREET.

Though, so long as a lot abutting on a street and the fee of the street in front of it are owned by different persons, as they were when a street railroad was constructed on such part of the street, and operation thereof commenced, without acquisition of legal right over such part of the street, the owner of the lot cannot maintain an action for the additional servitude, and the owner of the fee of the street is entitled only to nominal damages; yet, the ownership of the lot and the fee of such part of the street being merged in the same person before commencement of the action, he can recover substantial damages; the fee when so owned having a different value from what it has when owned alone.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 706–716, 741; Dec. Dig. § 270.*]

Appeal from Special Term, Kings County.