McCASLIN v. ALBERTSON.

1. BANKS AND BANKING—CONSERVATORS—FINALITY OF COMMIS-
SIONER'S DETERMINATION OF NECESSITY FOR LEVYING ASSESSMENT.
When the State banking commissioner levies and collects an as-
sessment under Act No. 32, § 5, Pub. Acts 1933, as amended
by Act No. 95, Pub. Acts 1933, while a bank is in hands of
conservator, the commissioner's determination of necessity for
such assessment is final and conclusive, such power being
necessarily granted in the face of an existing emergency to
preserve and protect the banking structure of the State by
providing speedy method of enforcing stockholders' liability
without resort to the delay of litigation in courts to accomplish
such purpose.

2. SAME—EMERGENCY LEGISLATION—STOCKHOLDERS' ASSESSMENT—
TRANSFER OF POWER TO LEVY.
Under the emergency banking act the power and authority to
levy a bank stock assessment was transferred from the courts
to the State banking commissioner, hence his levy while bank
was in hands of receiver was pursuant to duly constituted
authority (Act No. 32, Pub. Acts 1933, as amended by Act
No. 95, Pub. Acts 1933).

3. Same—Stockholders' Assessment—Interest.

Interest upon assessment on bank stockholder attaches from date of assessment by State banking commissioner where levy was made under emergency banking act (Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

4. Same—Prepayment of Dividend to Depositors—Assignments —Stockholders' Liability.

Instrument whereby depositor of insolvent bank assigned his right to share of assets of receivership estate to Federal agency which advanced funds for payment of dividends prior to liquidation of assets and collection of stockholders' assessment until such loaning agency was reimbursed *held*, not a waiver of right to insist upon enforcement of statutory liability of stockholders.

5. Constitutional Law—Determination of Necessity for Assessment on Bank Stockholder.

The determination of necessity for an assessment against stockholders of banks is not the exercise of a power which is inherently judicial, hence may be conferred upon the State banking commissioner under statute designed to meet an obvious financial crisis without violating due process clause of either Federal or State Constitutions as court may intervene to grant relief in case action by commissioner is founded on fraud, bad faith or obvious error (U. S. Const., am. 14, § 1; Mich. Const. 1908, art. 2, § 16; Act No. 32, Pub. Acts 1933, as amended).

6. Banks and Banking—Stockholders' Statutory Liability— Transfer of Stock.

A transfer by a stockholder of his stock to a financially irresponsible person, with knowledge that the bank is in a failing condition and made with intent to escape the statutory stockholders' liability, will be held to be null and void.

7. Same—Intent to Evade Liability.

Intent to avoid statutory liability of bank stockholder may be inferred from facts and circumstances surrounding the transfer.

8. Same—Evidence of Evasion.

Stockholder's transfer of his bank stock from himself to wife, her transfer to their son and stockholder's transfer of son's real estate to mother by exercising power of attorney previously given by son *held*, fraudulent notwithstanding testimony

of defendant stockholder, who had held stock, was a director and member of executive committee for a number of years and knew of continued heavy withdrawals by depositors, that such transfer was made in good faith.

9. SAME—TRANSFER OF STOCK MORE THAN FOUR MONTHS BEFORE APPOINTMENT OF RECEIVER—INTENT TO EVADE LIABILITY.

Fact that transfer of bank stock by holder thereof was effected more than four months before appointment of a receiver or filing of petition for such appointment *held*, immaterial where such transfer was made for the purpose of evading statutory liability thereon and thus perpetrate a fraud upon depositors and other creditors of the bank (3 Comp. Laws 1929, § 11906).

Appeal from Kent; Perkins (Willis B.), J. Submitted January 20, 1937. (Docket No. 80, Calendar No. 39,308.) Decided May 21, 1937.

Bill by William R. McCaslin, receiver of the Grand Rapids Savings Bank, a Michigan corporation, against Earl D. Albertson, John B. Martin and others to enforce a bank stock assessment. David H. Crowley, Attorney General, and the Reconstruction Finance Corporation, a Federal corporation, intervened. Decree for plaintiff. Defendants appeal. Affirmed.

*Alexander, McCaslin & Cholette,* for plaintiff.

*Butzel, Eamon, Long, Gust & Bills,* for intervener Reconstruction Finance corporation.

*John H. Brennan,* Deputy Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for Attorney General, intervener.

*Norris, McPherson, Harrington & Waer, Warner, Norcross & Judd* and *Butterfield, Keeney & Amberg,* for defendants.

CHANDLER, J. The defendants appeal from a decree enforcing a bank stockholders' assessment in

accordance with the statutory provisions therefor. 3 Comp. Laws 1929, § 11945.

The Grand Rapids Savings Bank, a Michigan banking corporation, was closed by proclamation of the governor on February 14, 1933. From April 20, 1933, to September 1, 1933, the affairs of the institution were conducted by a conservator appointed under the authority of the emergency banking legislation of 1933. During the period the bank was in the control of a conservator, a plan of reorganization was considered but adoption thereof was not effected due to the failure to secure approval of the plan by the Federal reserve board.

On September 1, 1933, a receiver was appointed for said bank, who proceeded to liquidate and wind up its affairs as provided by Act No. 32, Pub. Acts 1933, as amended. A new bank, known as the Peoples National Bank of Grand Rapids was organized on October 11, 1933, and certain assets of the Grand Rapids Savings Bank were purchased by the new bank. The assets, not so purchased, were pledged to the Reconstruction Finance Corporation as security for a loan in the amount of $4,200,000 made to the receiver.

Thereafter, the banking commissioner, by order made by him and approved by the governor under date of February 20, 1934, ordered and directed the receiver to enforce the statutory liability of the stockholders "in the amount of 100 per cent. of the par value of the stock of each and every stockholder of said bank." The present proceedings were instituted to enforce and collect such liability.

It is first contended by the appellants that the decree herein entered by the trial court is erroneous in that there has been no valid and binding determination of the necessity for the stockholders' assess-

ment, and that the State banking commissioner was wholly without authority to order such assessment, the same being a judicial function of the courts.

A determination of the question thus presented calls for an examination of various provisions of the so-called emergency banking legislation of 1933. By Act No. 32, § 4, Pub. Acts 1933, the banking commissioner is authorized, when certain conditions exist, to take over, as conservator, the custody and management of a State bank. Section 5, as amended by Act No. 95, Pub. Acts 1933, and section 6 of the same act are in part, respectively, as follows:

"Sec. 5. The commissioner of the State banking department, whenever he shall have taken over the management of any such bank * * * as provided in section four, shall have the right and power, with the approval of the governor, to proceed to wind up its affairs; or may continue the operation of the same, * * * and shall be and hereby is empowered to levy, enforce, and collect the statutory and/ or individual liability of the stockholders, within the meaning of section forty-eight of act sixty-six * * * of the public acts of the State of Michigan for the year nineteen hundred twenty-nine as amended, in such a manner, in such instalments, to be paid at such times and under such terms as he may deem advisable. * * *

"Sec. 6. In case the commissioner of the State banking department shall decide to wind up the affairs of any such bank, * * * he may appoint a receiver, with the approval of the governor, who shall proceed to close up such bank, * * * and enforce the statutory liability of the stockholders, as provided by law."

Thus it will be noted that section 5, as amended by Act No. 95, Pub. Acts 1933, provides for the operation of a conservatorship, including the levy and col-

lection of assessments from the stockholders while
section 6 authorizes the appointment of a receiver in
instances where liquidation of the institution is
deemed advisable and defines the duties of such re-
ceiver.    The appellants recognize that when the
banking commissioner levies and collects an assess-
ment under the authority conferred by section 5, as
amended by Act No. 95, Pub. Acts 1933, his determi-
nation of the necessity for such assessment is final
and conclusive, such power and authority being nec-
essarily granted in the face of an existing emer-
gency to preserve and protect the banking structure
of the State, by providing a speedy method of
enforcing the statutory stockholders' liability with-
out resorting to protracted litigation in the courts.
But it is urged that this consideration no longer ex-
ists in cases where a receiver has been appointed for
purposes of liquidation pursuant to section 6 and
that the language of said section, ''as provided by
law,'' contemplates a judicial determination of the
necessity for an assessment and the amount thereof
in accordance with the practice theretofore existing.

The legislation here involved has been previously
considered and discussed by this court.    An exami-
nation of prior decisions should be persuasive that
no distinction exists between section 5, as amended
by Act No. 95, Pub. Acts 1933, and section 6 as to the
authority of the State banking commissioner to levy
an assessment.    In the case of *In re Burger's Es-
tate,* 276 Mich. 485, we said:

''Necessity for Assessment.    The act of 1933
contained no language which required a court to
pass upon the necessity or amount of an assessment
as a prerequisite to its levy.    On the contrary, the
power to appoint a conservator to 'operate' the
bank or a receiver to liquidate it, upon which the

authority to levy assessment was based, was left to the judgment of the banking commissioner. Moreover, section 5 expressly authorized him, when conservator, to 'levy, enforce, and collect the statutory and/or individual liability of the stockholder, within the meaning of section forty-eight.' Also, the entire purport of the emergency act of 1933 was to confer upon the commissioner the powers of liquidation and reorganization possessed by the court under the general banking law, except that his acts were reviewable by the court on complaint of an interested person.

"It would be misconstruction to read the emergency acts as incorporating in them the court procedure of the general banking law for levying assessments."

Although the assessment under consideration in *Re Burger's Estate, supra,* was levied under the provisions of section 5, as amended by Act No. 95, Pub. Acts 1933, it is to be noted that the legislation was generally discussed and no line of demarcation was drawn between section 5, as amended by Act No. 95, Pub. Acts 1933, and section 6 as to the power and authority of the banking commissioner to levy an assessment. We again discussed the legislation in *Emery v. Shinn,* 278 Mich. 246, wherein it was stated:

"The act of 1933 was emergency legislation of limited duration. In purpose it established expeditious administrative procedure under which the State banking commissioner could appoint a receiver for an insolvent bank and call a ratable assessment upon its stockholders. If such procedure is not violative of the mentioned constitutional provision then the judgment must be affirmed."

We believe these cases to be controlling of the instant case and that by the mentioned legislation, the

power and authority to levy an assessment, previously vested in the courts, was thereby transferred to the State banking commissioner.

The decree of the trial court allowed the receiver to recover interest from the date of the assessment. Appellants claim this to be erroneous, and that interest attaches only from the time when there has been a judicial determination of the necessity for an assessment. We believe this contention to be without merit. Obviously, it pre-supposes the validity of their original argument that the court has the sole power to determine the necessity for an assessment. Under 3 Comp. Laws 1929, § 11945, the court determined the necessity for an assessment prior to the enactment of the emergency banking legislation. Under this state of the law, interest commenced to run from the date of such determination. *Wedemeyer* v. *Hindelang,* 161 Mich. 600. This determination, now being vested in the banking commissioner, the stockholders are liable for interest from the date of his order of assessment.

At the time of the loan made to the receiver by the Reconstruction Finance Corporation, the depositors and creditors receiving dividends therefrom, were required to execute the following which was placed on the back of the pay orders by means of a rubber stamp and known in the trial court as exhibit "C":

"The payee by indorsement hereof acknowledges that he is a direct beneficiary of a loan made to the receiver of the Grand Rapids Savings Bank by Reconstruction Finance Corporation, secured by pledge of assets of the receivership estate; and to protect said corporation, in the event said loan is not otherwise repaid, does by this indorsement assign, transfer, and set over unto said Reconstruction Finance Corporation his claim against, and interest

in, the assets of the receivership estate until said corporation shall have received out of his distributive share reimbursement of the amount hereby received, and does by this indorsement assign, transfer and set over to Reconstruction Finance Corporation as security for said loan the obligation or debt of Grand Rapids Savings Bank to the undersigned."

Appellants urge that by this action the depositors and other creditors of the bank "have waived their right to insist upon the enforcement of the statutory liability of stockholders, and have impliedly consented to the release thereof." The receiver pledged the assets of the bank to the Reconstruction Finance Corporation as security for the loan of $4,200,000, excepting those assets which had been purchased by the new bank. From the funds so borrowed the depositors received a 50 per cent. dividend. To consummate the loan and to protect the Reconstruction Finance Corporation, exhibit "C" was executed. The instrument is not in terms or by implication a waiver of the statutory liability of the stockholders. The record is clear that the assets of the bank, together with the stockholders' liability will not be sufficient to pay the creditors and depositors of the bank in full. That the depositors have received a dividend from the loan to the receiver in advance of what they would have received had they waited for liquidation of the bank's assets and collection of the stockholders' liability is no basis for the assertion that the liability of the stockholders has been waived and that they may escape the obligations attaching to the ownership of the stock.

Appellants attack the questioned legislation as violative of the due process clause of the State and of the Federal Constitutions. (Mich. Const. 1908, art. 2, § 16; U. S. Const., am. 14, § 1.) The same

objection was raised in *Robinson* v. *People's Bank of Leslie,* 266 Mich. 178 (92 A. L. R. 1251). It was there decided that the statute was constitutional. Appellants would have this court declare the statute unconstitutional for the reason that it transferred the control of liquidation of State banks from the courts to the banking commissioner. They further say, "that law gave State officers arbitrary power to operate such banks at the risk and expense of the stockholders, or to close them without recourse to any court on the question of insolvency, and at the same time denied to stockholders of solvent banks the privilege of liquidating such banks voluntarily as provided by the general banking act, and deprived such stockholders of their right to resort to any court to enjoin the commissioner from operating such banks at the stockholders' risk and expense, or in anywise to question any decision of the commissioner as to the winding up and liquidating of any such bank rather than reopening it, while at the same time denying to any such stockholder the right to dispose of his stock and end the chance of future statutory liability, rather than to assume the risk of operation of the bank by a State officer."

The determination by the commissioner of the necessity for an assessment is not the exercise of a power which is inherently judicial. *Emery* v. *Shinn, supra.* Appellants cannot successfully contend that they are thereby deprived of their right of recourse to the courts. Had the decision of the banking commissioner been founded on fraud, bad faith or obvious error, it could scarcely be seriously proposed that no court would have intervened to grant relief in an appropriate proceeding.

The law was enacted in the face of an obvious financial crisis. It was intended to provide a necessary speedy procedure for the reorganization of

closed banks, in proper cases, and for the liquidation of others where liquidation was deemed advisable. Existing circumstances would not permit resort to the delay of litigation in courts to accomplish these purposes. As was stated in *Emery* v. *Shinn, supra,* "As emergency legislation we hold the act valid."

As to the defendant, John B. Martin, the following facts are revealed by the record. He had been a director and member of the executive committee of the bank for a number of years. He knew that the deposits of the bank had been reduced during the period from 1928 to 1932 in the amount of approximately $10,000,000 and of the slow and steady process of liquidation of the bank's assets which had become necessary to meet withdrawals. He admitted that he had knowledge that it was becoming increasingly difficult to meet the demands of the depositors and that to meet this demand it was necessary for the bank to borrow money from the Reconstruction Finance Corporation in 1932.

On December 1, 1932, while the State banking department was conducting an examination of the bank, he transferred to his wife, Althea W. Martin, 3,300 shares of the stock of the bank owned by him. On the same day, the stock was transferred from his wife to his son, John B. Martin, Jr., who was then a student in England. John B. Martin, Jr., owned considerable real estate at the time and his father held a general power of attorney from him to handle his affairs. Simultaneously with the transfer of the stock, John B. Martin, acting by virtue of his power of attorney, transferred all of the real estate owned by his son to his wife, Althea W. Martin, thereby rendering the son without assets, with the exception of the stock so transferred.

When the stock transfer was made the certificates at all times remained in the possession of the appel-

lant, John B. Martin. His son knew nothing of the transaction until some months later. John B. Martin testified that the transfers were made to repay his wife money which he had borrowed from her and that he had no thought of intending to avoid a stockholders' assessment by his action.

It is established that a transfer by a stockholder of his stock to a financially irresponsible person, with knowledge that the bank is in a failing condition and made with intent to escape the statutory stockholders' liability will be held to be null and void. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565). The intent to avoid liability may be inferred from the facts and circumstances surrounding the transfer and this would be true notwithstanding the testimony of the appellant, Martin, that the transfer was made in good faith, to discharge obligations owing by him to his wife, and not for the purpose of avoiding liability.

A careful and serious consideration of the facts before us is convincing that a more glaring attempt to evade the statutory liability of a stockholder in a banking corporation has not come to our attention. Mr. Martin was familiar with the condition of the bank, with the depreciation of the bank's assets and with the continued heavy withdrawals. He was not content with transferring the stock from himself to his son, who prior thereto was worth several thousand dollars and was collectible, but in practically the same act he transferred the assets of his son to his wife in what we believe was a deliberate and successful effort to render the son uncollectible. We cannot hold otherwise than that the transfer of this stock was a fraud. See *Baker* v. *Reeves,* 85 Fed. 837.

Appellant Martin, in a supplemental brief, contends that the statute, 3 Comp. Laws, 1929, § 11906, has abrogated the theretofore existing law relative

to the question of fraudulent transfers of bank stock, and urges that under that statute no transfer made prior to four months from the filing of a petition for the appointment of a receiver can be held to be fraudulent, regardless of the intent or motives of the transferor at the time of the transfer. From the record it does not appear that this question was before the trial court. It was not passed upon by that court. It is raised here for the first time in a supplemental brief filed in behalf of appellant Martin. Inasmuch as this question has been raised, we have deemed it advisable to express our views and determine the issue so presented and discussed.

The statute, 3 Comp. Laws, 1929, § 11906, does not in our opinion, either expressly or impliedly, relieve a stockholder in a banking corporation of his statutory liability where he has transferred his stock more than four months before the appointment of a receiver, or the filing of a petition for such appointment, where the transfer is shown to have been made for the purpose of evading his statutory liability. We, therefore, hold that it is immaterial, so far as this transaction is concerned, whether the transfer was made more than four months prior to the filing of the petition for the appointment of the receiver, or the actual appointment thereof, provided such transfer was made by the stockholder for the purpose of escaping his statutory liability and thus perpetrating a fraud upon the depositors and other creditors of such banking institution.

The decree is affirmed. Appellees will recover costs in both courts.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Potter, JJ., concurred.