Donald Bicknell, as Receiver of Bank of Saginaw, a Michigan Banking Corporation of Saginaw, Michigan, Plaintiff, *v.* Amelia S. Hood, Defendant.

Supreme Court, Yates County, August 29, 1938.

*H. C. & H. B. Harpending* [*John J. Hyland* of counsel], for the plaintiff.

*W. S. O'Brien*, for the defendant.

LAPHAM, J. The receiver of the Bank of Saginaw, a banking corporation organized under the laws of the State of Michigan, brings this action against the defendant to recover an assessment on the forty shares of the capital stock of the bank of which the defendant was the record owner when the bank was compelled to suspend business in 1933.

The facts alleged in the pleadings and adduced upon the trial of the action show that the bank was insolvent in October, 1933, and that it still is unable to meet its liabilities and that early in 1933 a conservator was appointed by the Commissioner of the Banking Department of the State of Michigan to assume the custody and management of the bank. The conservator was succeeded by various receivers until by an order of the Banking Commissioner made on February 15, 1936, the acting receiver was removed from office and the plaintiff in this action appointed.

At the time when the bank closed its doors in October, 1933, section 11945 of the Compiled Laws of the State of Michigan for the year 1929 was in effect and this section provides in part: " The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock; * * *. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank."

On September 5, 1934, the Commissioner of the Banking Department of the State of Michigan, with the approval of the Governor, ordered the receiver of the bank to enforce the statutory liability of the stockholders in the amount of 100 per cent of the par value of the shares of stock held by each stockholder. The order declared that the assessment should be immediately effective and that the assessment was a personal liability of each stockholder. On December 29, 1934, notice of the assessment and demand for its payment were mailed to the defendant and on November 27, 1937, this action was commenced by the service of a summons on the defendant.

The complaint is challeged by a motion to dismiss, made by the defendant at the close of the plaintiff's evidence and renewed at the end of the case, on the ground that the action was barred by subdivision 4 of section 49 of the Civil Practice Act which provides that an action against a director or a stockholder of a moneyed corporation or a banking association to recover a penalty or a forfeiture imposed or to enforce a liability created by common law or by statute must be instituted within three years after the cause of action has accrued. The defendant contends that the cause of action to recover the assessment accrued on September 5, 1934, or more than three years prior to the institution of this action. The plaintiff contends that the statute did not begin to run at least until demand was made upon the defendant for payment of the assessment on December 29, 1934. The time of the accrual of the action is the primary question raised by the answer and discussed in the briefs submitted by both parties.

The right to recover the assessment which the plaintiff seeks to enforce is created by a statute of the State of Michigan, and although the courts of this State will open their forums to the enforcement of a right founded on a foreign statute which does not conflict with local public policy, the action must be brought within the period fixed by the Statute of Limitations of this State for the commencement of suits of this character. (*Platt* v. *Wilmot*, 193 U. S. 602; *Pufahl* v. *Estate of Parks*, 299 id. 217; *Great Western Telegraph Co.* v. *Purdy*, 162 id. 329; *Hobbs* v. *National Bank of Commerce*, 96 Fed. 396; *Ramsden* v. *Gately*, 142 id. 912.)

The Statute of Limitations of the forum is controlling even though the plaintiff is a foreign corporation or is suing in its behalf. (*Platt* v. *Wilmot*, 193 U. S. 602; *Mann* v. *Kleisdorff*, 16 F. [2d] 997; *Hillmer* v. *Anderson*, 15 F. Supp. 457.)

Section 13 of the Civil Practice Act, which provides that an action to enforce a right arising outside this State cannot be brought after the expiration of the time fixed by the laws of the State where the cause of action arose unless the cause of action

accrued in favor of a resident of this State, can at the outset be excluded from consideration. This section does not extend the time fixed by the Statute of Limitations of this State but merely adds an additional limitation on the time for beginning the action. (*Kahn* v. *Commercial Union of America, Inc.*, 227 App. Div. 82; *Isenberg* v. *Rainier*, 145 id. 256.)

The plaintiff cannot rely, therefore, on the six-year period fixed by section 13976 of the Compiled Laws of Michigan (1929) for personal, as distinguished from real, actions, but must bring himself within the limitation imposed by subdivision 4 of section 49 of the Civil Practice Act.

A cause of action accrues when the right to go into the courts to sue on the cause of action attaches. (*Cary* v. *Koerner*, 200 N. Y. 253; *Amy* v. *Dubuque*, 98 U. S. 470.)

The time when a right accrues is an integral part of the right itself, and in order to determine this time with precision we must look to the statutes of Michigan creating the statutory liability of stockholders of insolvent banks and establishing the machinery for its enforcement. The order of the State Banking Commissioner on September 5, 1934, directing the receiver to enforce the statutory liability of the stockholders of the bank, was made under the authority of section 5 of act 95 and section 6 of act 32 of the Public Acts of Michigan for the year 1933. Section 5, so far as it is pertinent, provides that the Commissioner of the State Banking Department who has assumed the management of any bank shall have the right and power, with the approval of the Governor, to proceed to wind up the affairs of the bank and " shall be and hereby is empowered to levy, enforce, and collect, the statutory and/or individual liability of the stockholders, * * * in such a manner, in such installments, to be paid at such times and under such terms as he may deem advisable." Section 6 provides in part that the Commissioner of the State Banking Department may appoint a receiver, with the approval of the Governor, who shall proceed to close up such bank and " enforce the statutory liability of the stockholders, as provided by law."

The order made under the authority conferred by these sections directed the receiver to enforce the statutory liability of the stockholders and stated in part:

" Said assessment shall be immediately effective and when collected shall become a part of the assets of the receivership, to be disposed of according to the laws of the State of Michigan and rules and regulations of this Department.

" Said assessment is a personal liability of each stockholder equal to the par value of the stock held." (Exhibit 10.)

In the light of the terms of the order and the pertinent statutes of the State of Michigan the conclusion seems inescapable that the cause of action to recover the assessment accrued in favor of the receiver on the date when the order of the assessment was made. The liability of each stockholder of the bank was definitely fixed at that time and a right of action to sue for the enforcement of the liability vested at once in the receiver. There was here no lapse of time between the date when the liability of the stockholder attached and the time when the right to recover the assessment by action vested in the receiver to which the court adverted in *Meeker* v. *Saskill* (164 Misc. 718). The creation of the liability of the defendant stockholder and the vesting of the right to sue in the receiver coalesced and sprang into being at the same time. The time and the manner of enforcing the liability of the stockholders, which were intrusted by the statute to the State Banking Commissioner, were fixed by the direction that the assessment was to be effective immediately. No period of grace was allowed to a stockholder and in the absence of a time fixed in the future for payment of the assessment the liability of the stockholder attached at once and it was the duty of the receiver after the order had been made to take steps to collect the assessment. The conclusion that the order levying the assessment and not the demand for its payment moved the Statute of Limitations into action is in harmony with the decisions under the National Banking Act which have held that the Statute of Limitations begins to run against the enforcement of the liability of stockholders of national banks from the date of assessment by the Comptroller of the Currency. (*Rankin* v. *Barton*, 199 U. S. 228; *DeWeese* v. *Smith*, 106 Fed. 438; affd., 187 U. S. 637; *Mann* v. *Kleisdorff*, 16 F. [2d] 997; *Drain* v. *Stough*, 61 id. 668; *Beckham* v. *Hague*, 38 Misc. 606; affd., 80 App. Div. 626.)

The statutes of Michigan creating the liability of stockholders of insolvent banks for the debts of the bank and vesting broad powers of supervision and control in the State Banking Commissioner are very similar to the provisions of the National Banking Act under which the Comptroller of the Currency exercises powers comparable to those vested in the State Banking Commissioner of Michigan. (U. S. Code, tit. 12, §§ 63, 191, 192.) These decisions of the Federal courts under the National Banking Act have peculiar relevance and authority under these circumstances for State legislation which is modeled after a Federal statute will be construed in accordance with Federal decisions. (*Commissioner of Banks* v. *Prudential Trust Co.*, 242 Mass. 78, 85; 136 N. E. 410.)

The effect of an order directing an assessment upon the operation of the Statute of Limitations was discussed by Mr. Justice McKENNA in *Rankin* v. *Barton* (*supra*, at pp. 231, 232): " The administration of the bank's assets is, therefore, vested in the Comptroller of the Currency as an officer of the United States. He appoints the receiver and directs his acts. The individual liability of a stockholder can only be enforced by his order. The provision is as much for the benefit of the stockholders as for the United States, and it is indispensable to the bringing of a suit against the stockholder. In other words, the liability dates from the order of the Comptroller."

The case of *Meeker* v. *Oraman Realty Corp.* (163 Misc. 702; affd., 254 App. Div. 563), which is relied upon by the plaintiff to support his view that the operation of the Statute of Limitations was deferred until the making of a demand for payment of the assessment, is not controlling here. In that case the Comptroller of the Currency made an order of assessment upon the shareholders of the First National Bank of Mamaroneck on April 21, 1933, and directed the stockholders to pay the assessment on or before May 29, 1933. On this state of facts it is clear that no action against a stockholder could have been maintained until the expiration of the period fixed for payment of the assessment. In this case, on the other hand, no time was set in the future for the payment of the assessment, but the assessment under the terms of the order of the State Banking Commissioner was due and payable at once. For that reason those decisions of the Federal courts declaring that the date fixed by the Comptroller for payment of the assessment is the starting point of the operation of the Statute of Limitations are not relevant. (*Aldrich* v. *Skinner*, 98 Fed. 375; *Rankin* v. *Miller*, 207 id. 602; *McDonald* v. *Thompson*, 184 U. S. 71.)

The plaintiff calls upon section 632 (formerly section 80) of the Banking Law of this State in aid of his contention that the three-year period prescribed by subdivision 4 of section 49 of the Civil Practice Act must be computed from the making of the demand for payment and the failure of the stockholder to comply with the demand. Section 632 in contrast to the Michigan statutes requires the Superintendent of Banks to make a demand for payment of an assessment and to fix a date for such payment and explicitly provides that the Superintendent shall have a cause of action only after the failure of the stockholder to heed the demand.

The provisions of the Banking Law of this State apply only to banking corporations organized under article 3 of the Banking Law (Banking Law, § 2), and none of these provisions have any

application to this action brought on behalf of a foreign banking corporation on a right created by the statute of another State. (*Bankson* v. *Anderson*, 21 F. Supp. 67.)

The plaintiff himself has acknowledged that the defendant became indebted to the bank and to the receiver on the date when the assessment was ordered. The ninth paragraph of the complaint alleges that by virtue of the assessment levied by the Banking Commissioner of the State of Michigan the defendant became indebted to the bank and to the plaintiff for the benefit of the bank's depositors and creditors in the sum of $4,000, with interest at five per cent from September 5, 1934, the date when the assessment was levied. The prayer for judgment in the complaint asks for interest from September 5, 1934.

In the face of these allegations the plaintiff insists that a demand was necessary before the receiver was entitled to maintain an action to recover the assessment. But the statutes of Michigan are silent on the necessity of a demand for payment of the assessment and in contrast with the Banking Law of this State they do not require a demand and notice before a cause of action vests in the official charged with supervision of the banking system. The General Banking Law of Michigan contemplates two kinds of assessments: An assessment to restore an impairment of capital where notice of the assessment must be given to the stockholder and an assessment against the stockholder of an insolvent bank under section 11945 where no demand is expressly required. (3 Compiled Laws of Michigan [1929], §§ 11898 *et seq.; Matter of Burger*, 276 Mich. 485; 267 N. W. 887.)

The silence of the Michigan statutes on the necessity of a demand for payment of the assessment is consistent with the purpose and the nature of the banking legislation of which the three sections involved in this case are vital parts. This legislation, known as the McNitt-Creen Act (Public Acts [1933], No. 32, 3 Compiled Laws of Michigan, § 12077, subds. 1, 19), was emergency legislation enacted to meet the acute financial and economic condition which confronted the State of Michigan in 1933. Governmental supervision of the banking system was deemed essential to preserve the stability of the banking and financial institutions of the State. In passing on this emergency legislation and on the broad powers conferred by it on the State Banking Commissioner the Supreme Court of Michigan said: " We again discussed the legislation in *Emery* v. *Shinn*, 278 Mich. 246, wherein it was stated: ' The act of 1933 was emergency legislation of limited duration. In purpose it established expeditious administrative procedure under which the State Banking Commissioner could appoint a receiver

for an insolvent bank and call a ratable assessment upon its stockholders. If such procedure is not violative of the mentioned constitutional provision then the judgment must be offered.' We believe these cases to be controlling of the instant case and that by the mentioned legislation, the power and authority to levy an assessment, previously vested in the courts, was thereby transferred to the State Banking Commissioner." (*McCaslin* v. *Albertson*, 279 Mich. 650; 273 N. W. 302.)

But it is not necessary for present purposes to decide whether a demand was essential. If a demand were a prerequisite to the maintenance of an action to recover the amount of the assessment, the failure of the receiver to make the demand would not suspend the running of the Statute of Limitations. (Civ. Prac. Act, § 15; *Shipman* v. *Treadwell*, 208 N. Y. 404, 411.)

Section 15 of the Civil Practice Act, which is controlling on the manner of computing the time within which an action must be begun, provides, with two exceptions not pertinent here: " Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete."

The right to make a demand for the payment of the assessment was complete on September 5, 1934, when the State Banking Commissioner ordered an assessment of 100 per cent on the shareholders of the bank and the failure of the receiver to demand payment at once did not defer the operation of the Statute of Limitations. If the time for the commencement of an action were not to begin to run until the making of a demand for the enforcement of an existing right, the policy which the Statute of Limitations was designed to advance would be defeated for a demand could be indefinitely postponed and a right kept alive long after its creation. In the analogous situation of a note payable on demand the courts of this State and of Michigan have uniformly applied the rule that the Statute of Limitations begins to run from the date of the note and not from the time of the demand for its payment. (*People's Trust Co.* v. *O'Neil*, 273 N. Y. 312, 315; *Sewell* v. *Swift*, 151 App. Div. 584; *Taylor* v. *Rugenstein*, 245 Mich. 152; 222 N. W. 107.)

The motion of the defendant to dismiss the complaint must be granted because the action was brought more than three years after the cause of action accrued against the defendant.

Let an order enter accordingly.