VAN HOWE v. RICHMOND REALTY CO.

1. BANKS AND BANKING—TRANSFER OF STOCK MORE THAN FOUR
MONTHS BEFORE APPOINTMENT OF RECEIVER—INTENT TO EVADE
LIABILITY—STATUTES.

Fact that transfer of bank stock by holder thereof was ef-
fected more than four months before filing of a petition for
appointment of a receiver is immaterial where transfer is
made for purpose of evading liability thereon as imposed by
statute in effect and thus perpetrating a fraud upon de-
positors and other creditors of the bank although such statute
has since been repealed (3 Comp. Laws 1929, §§ 11906, 11945;
Act No. 341, § 290, Pub. Acts 1937).

2. SAME—TRANSFER OF STOCK—INSOLVENCY OF BANK.

It was not a condition precedent to holding two former stock-
holders for statutory liability on bank stock notwithstanding
its transfer to financially irresponsible corporation of which
they held a controlling interest that bank be actually insolvent
where it appears there was no doubt that its capital stock
was at least seriously impaired at that time, defendants had
knowledge of existing economic conditions, the condition of
the bank's assets, and impending probability that an assess-
ment would be necessary to pay creditors (3 Comp. Laws
1929, §§ 11906, 11945).

3. SAME—TRANSFER OF STOCK—GOOD FAITH.

Bank stockholders who held controlling interest in financially
irresponsible corporation to which they conveyed 91 shares
of bank stock for mortgaged farms having a net valuation of
less than $3,500 did not effect a transfer of the bank stock
in good faith notwithstanding consideration may have been
a fair one, in view of their knowledge of the financial con-
dition of both the bank and the transferee corporation, as
the net result was to hinder, delay or defraud the bank's
creditors (3 Comp. Laws 1929, §§ 11906, 11945).

4. SAME—TRANSFER OF STOCK—IMPOSITION OF STATUTORY LIABILITY.

A transfer of stock in a bank in a failing condition to a
financially irresponsible corporate transferee made with intent
on part of stockholders to escape statutory liability on the
stock is void as far as receiver of bank seeking to subject
stock to statutory assessment is concerned where stockholders

had knowledge of condition of bank and transferee (3 Comp. Laws 1929, §§ 11906, 11945).

5. Same—Intent to Evade Liability.

Intent to avoid statutory liability of bank stockholder may be inferred from facts and circumstances surrounding the transfer.

6. Same—Statutory Liability of Stockholders—Transfer of Stock in Fraud of Bank's Creditors.

The transfer of 91 shares of stock in a bank by stockholders who were directors in the bank to a financially irresponsible corporation which they controlled *held,* void in suit by bank receiver seeking to collect statutory liability where failing condition of bank and financial irresponsibility of transferee were known to stockholders who received assets from the corporation, as equity will not countenance such constructive fraud against depositors and creditors of the bank (3 Comp. Laws 1929, §§ 11906, 11945).

Appeal from Wayne; Nicol (Henry G.), J. Submitted April 8, 1942. (Docket No. 23, Calendar No. 41,842.) Decided June 10, 1942.

Bill by Melvin Van Howe, as receiver of Garland State Bank, against Richmond Realty Company, a Michigan corporation, Walter C. Piper, and Hugo J. Hesse and wife to set aside transfers of bank stock and to subject defendants Piper and Hesse to statutory double liability on bank stock. Decree for plaintiff against defendant Richmond Realty Company. Plaintiff appeals. Reversed as to defendants Piper and Hesse.

*John E. Merrill* and *Hugh H. Neale,* for plaintiff.

*James E. Littell* and *Robert J. Hesse,* for defendants.

Boyles, J. This is an action in chancery to set aside transfers of certain bank stock to defendant Richmond Realty Company by defendants Walter C.

Piper, Hugo J. Hesse and S. Marie Hesse and to subject them to the statutory liability * as stockholders of the Garland State Bank of which plaintiff is receiver.

The bill of complaint was filed August 31, 1936, referring to transactions occurring prior to that date. The statute (3 Comp. Laws 1929, § 11906 [Stat. Ann. § 23.14]) then in effect controls the instant case, although since expressly repealed by section 290 of the financial institutions act (Act No. 341, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 11897–290, Stat. Ann. 1941 Cum. Supp. § 23.1133]). Its provisions were in part reenacted by section 46 of the 1937 act as last amended (Comp. Laws Supp. 1940, § 11897–46, Stat. Ann. 1941 Cum. Supp. § 23.777). That portion of the statute applicable to this case reads as follows:

"All sales, transfers and assignments of any stock made or given with the intent and purpose on the part of such stockholder to hinder, delay or defraud the creditors of such bank or any of them shall be null and void as against the creditors of such bank, except as to purchasers in good faith and for present fair consideration, if made within four months prior to the filing of a petition asking for the appointment of a receiver of such bank."

No question is raised either in the court below or on this appeal that the transfers were not made within four months prior to the filing of a petition asking for the appointment of a receiver of such bank. If made for the purpose of evading statutory liability and thus to perpetrate a fraud upon depositors and other creditors of the bank, the fact of its transfer prior to the four months' period would in any event be immaterial. *McCaslin* v. *Albertson*, 279 Mich. 650.

---

* See 3 Comp. Laws 1929, § 11945 (Stat. Ann. § 23.52).—REPORTER.

The issue is one of fact. The parties agree that the only issue is whether the individual defendants transferred their stock to the corporate defendant with intent or purpose on their part to hinder, delay or defraud the creditors of the bank, in violation of the statute. The bill of complaint alleged that defendants Walter C. Piper and Hugo J. Hesse had been directors from the organization of the bank to the appointment of a receiver; that on December 31, 1931, the defendants, as directors, knew that the capital of the bank was impaired and that the bank was then unable to pay its probable liability and existing debts as they matured; and that on January 12, 1932, the board of directors had adopted a moratorium on deposit withdrawals. The bill further alleged that defendants, having knowledge of the impaired condition of the assets of the bank and of the insolvency thereof, and with intent to relieve themselves of the statutory double liability, and with intent to hinder, delay and defraud plaintiff and the creditors, did transfer their bank stock to the Richmond Realty Company; that the Richmond Realty Company, of which defendants Walter C. Piper and Hugo J. Hesse were stockholders, was insolvent at the date of the transfer and so continued, and was unable to pay the stock assessment, and that its insolvency was well known to defendants. It was further alleged, in the alternative, that the said transfers were a mere sham, without consideration, and made for the purpose of enabling the individual defendants to have and control the beneficial ownership of the stock and at the same time to evade payment of the statutory liability and to hinder, delay and defraud creditors of said bank. Demand for payment was made and refused. Defendants' answer generally denied the allegations of the bill of complaint. After hear-

ing, the court held the corporate defendant liable, and dismissed the bill of complaint as to the individual defendants. The receiver appeals.

It was stipulated by counsel that in so far as S. Marie Hesse, wife of Hugo J. Hesse, is concerned, she would be bound by the decision as to the remaining defendants. References hereafter to individual defendants will be understood to refer particularly to Walter C. Piper and Hugo J. Hesse, who were the active parties in the matters complained of.

The record before us fully establishes the following factual situation: Walter C. Piper and Hugo J. Hesse were directors of the Garland State Bank from its inception and Hesse had served as its president. Both are experienced businessmen and have had extensive corporate and real estate experience. Defendant Walter C. Piper was a stockholder in various companies and was the senior associate of defendant Hesse in their various real estate development companies. Hesse had been associated with Mr. Piper in the real estate business since 1907. He held stock in various other banking institutions, and was cognizant of the current financial difficulties of such institutions. Defendant Hesse attended every meeting of the board of directors of the Garland State Bank, was vice-president in 1931, and was elected president in January, 1932. Defendant Piper, as a director of the bank, attended its directors' meetings and took an active part in its affairs.

There is much evidence of the failing condition of the bank. On June 17, 1931, both defendants attended a directors' meeting at which the officers of the bank were authorized to negotiate a loan with Detroit financial institutions should it become necessary to raise cash to meet the demands of the depositors. On November 4, 1931, both defendants attended a directors' meeting at which the cashier and

assistant cashier accepted reductions in salaries and the services of the janitor were dispensed with. The owner of the bank building agreed to assume the cost of heating the bank building, taxes and insurance, to save the bank $1,423 a year. The bank, with a capitalization of $25,000, reached a high in footings of about $545,000 in 1929, and thereafter its footings decreased to $194,916.51 on December 1, 1931. On December 2, 1931, the defendants knew that there was a bond depreciation of $19,281.25 and $27,962.50 in defaulted bonds, and admitted a net loss in total footings of approximately $300,000. They had taken action to reduce operating expenses of the bank. At the directors' meeting following the annual stockholders' meeting on January 12, 1932, a moratorium resolution was adopted because of the financial crisis existing and because the bank had had to pay out $207,000 to its own depositors during the preceding year, and to protect the interests of depositors and stockholders. Both defendants attended this meeting, Hesse was elected president, and the minutes of meeting show the following occurred:

"He (Hugo J. Hesse) proceeded to advise the board of the serious financial crisis existing, and the panicky attitude of the public at the present time. Further that during the past year and one-half this bank had paid out to its depositors a total of $319,000, and of this sum, the sum of $207,000 in the past year and that this bank was being penalized because other banks had deferred paying depositors, some since March, 1931, at about which date the banks of Ferndale and Royal Oak in Oakland county closed.

"Further that it was imperative that prompt action be taken to protect the interests of depositors and stockholders to regulate the withdrawal of savings funds in particular."

At that time the total available cash to meet withdrawals by depositors and to conduct the affairs of

the bank was only about $30,000. Most of its available assets had been liquidated, the balance largely depreciated in value.

From the foregoing it appears that defendants had knowledge of the existing economic conditions of the bank at the time they transferred the stock in question to the Richmond Realty Company in March, 1932. They knew that the bank was then unable to meet the demands that creditors might make, and of the impending probability that an assessment would be necessary to enforce the statutory double liability against them, as stockholders, to pay its creditors. The result of this knowledge was the moratorium against withdrawals, adopted by the directors January 12, 1932. It was not necessary that the bank be actually insolvent, although there is no doubt its capital was at least seriously impaired at that time.

On March 30, 1932, defendants transferred the stock in question, 91 shares of Garland State Bank, to Richmond Realty Company, retaining only the necessary qualifying stock as directors. The realty company was financially irresponsible. It was organized May 2, 1929, to engage in the real estate business. Of its 300 shares, 180 shares were held by defendants Walter C. Piper and Hugo J. Hesse. The other shares were held by a relative and by another director of the bank. Its corporate annual reports filed with the secretary of State show deficits for the years 1930 to 1933, inclusive, as follows: $7,023.46 — $26,700.64 — $59,532.59 — $55,161.57. Its annual statements, prepared by its secretary, showed even larger deficits. The ultimate deficit when it lost its remaining property at the scavenger tax sale was approximately $152,000. The principal assets of the corporation were two subdivisions carried at book values of $53,883.50 and $102,201.71. These lands were subject to mortgages totaling ap-

proximately $67,000. It owed the other defendants herein approximately $103,000. Its total liabilities exceeded total assets by over $50,000. With the exception of the Bogren and Secord farms conveyed to defendants Hesse and Piper, the other farms were either sold for nominal amounts in excess of the mortgages, deeded to the mortgagees in satisfaction of the mortgages, or foreclosed by the vendors. The corporation paid no taxes on its real estate after 1929. At the scavenger tax sale only three bids were matched and both subdivisions are now owned by the State.

The conclusion is unavoidable that defendants knew the financial condition of the Richmond Realty Company when they transferred to it the bank stock in question. In substance, they owned the realty company and knew that any attempt to enforce the statutory liability against it for the benefit of creditors of the bank would be futile. Consideration for the transfer of the bank stock, to defendants Piper and Hesse, as stated by them, was the conveyance by Richmond Realty Company to Walter C. Piper of the Secord farm carried at a net valuation of $1,785.82, and the conveyance to Hugo J. Hesse and S. Marie Hesse of the Bogren farm carried at $1,665.36. The actual value of the two farms is in dispute. Conceding that the transfer was for a fair consideration, on the ground that the bank stock was of doubtful value and might actually be a liability in the hands of the owner, still it is plain that defendants had in mind the financial condition of both the bank and the realty company, and their statutory liability as owners of the bank stock. The net result was to hinder, delay or defraud the creditors of the bank. It was not a transfer to purchasers in good faith.

In establishing plaintiff's case, it was not necessary to prove that either the bank or the realty company was actually insolvent. If the bank was in a failing condition, if the realty company was financially irresponsible, and the individual defendants had knowledge of those facts, the transfer of the stock in question, if made with intent to escape the statutory liability, is void.

"It is established that a transfer by a stockholder of his stock to a financially irresponsible person, with knowledge that the bank is in a failing condition and made with intent to escape the statutory stockholders' liability will be held to be null and void. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565). The intent to avoid liability may be inferred from the facts and circumstances surrounding the transfer and this would be true notwithstanding the testimony of the appellant, Martin, that the transfer was made in good faith, to discharge obligations owing by him to his wife, and not for the purpose of avoiding liability." *McCaslin* v. *Albertson, supra.*

See, also, *Glass* v. *MacNaughton,* 291 Mich. 363, where this court said:

"Intent to escape statutory liability through sale of their bank stock is a necessary component of the fraud with which defendants are charged. *Foster* v. *Row, supra; Detroit Trust Co.* v. *Hartwick,* 278 Mich. 139. But, as indicated by the case last cited, as well as *Detroit Trust Co.* v. *Drummond,* 284 Mich. 399, such intent need not necessarily be proved by direct evidence but may be found as an inference from all the facts in the case."

The individual defendants transferred stock in a bank of which they were directors, fully cognizant of its failing condition, to a corporation in which they

owned the controlling interest, likewise knowing that a stock assessment was not collectible against that corporation. If upheld, they would be the owners of the real estate deeded to them by the corporation in exchange for the stock, which might otherwise have been subjected to execution against the Richmond Realty Company to collect the assessment. They would not only own the real estate as individuals, but by this very transaction escape their stockholders' liability for an assessment. Equity will not countenance this palpable fraud against the depositors and creditors of the bank. It must be held that at the least the defendants are guilty of a constructive fraud.

A decree may be entered declaring the stock transfers null and void. The banking commissioner having levied an assessment against the stockholders of the bank, the individual defendants herein must be held liable for the assessment on the stock in question, with interest at the legal rate from March 14, 1934, the date of the commissioner's assessment.

Reversed for entry of a decree in consonance herewith. Costs to appellant.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred. BUSHNELL, J., did not sit. WIEST, J., took no part in this decision.